Freeman, J.,
delivered the opinion of the court.
*667 James King, sr., died July 18, 1867, leaving as residuary legatees under his will Robert G. King, Joseph L. King and Watkins King; John G. English and John G. King were appointed his executors, and qualified as such at the August Term of the County Court of Sullivan county.
Robert G. King was indebted to English in a considerable sum paid by him for King as security; said King was also indebted to John JR. Brainier, who had obtained a decree against him in the Chancery Court at Knoxville, on an attachment bill, in which proceeding, a tract of land had been sold, leaving a considerable balance on the decree. John G. English sued on an original attachment before a justice of the peace, and hard it levied on the interest of R. G. King, on August 10, 1867. Branner had an execution issued to Sullivan county on his decree, tested on the first Monday in April, 1867, on which the sheriff summoned J. G. English and John G. King, executors, on process of garnishment, notifying them that .lie had levied on the interest of King in their hands, in his grandfather’s estate.' This garnishment was served by leaving a copy of the same with English and King on August -11, 1867. On July 27, 1867, R. G. King made a transfer and sale of his interest in said estate to his younger brother J. L. King, for the consideration of the “Schooner Elizabeth,” then plying in the waters near Mobile, Alabama, when the conveyance was made, the parties then residing there.
The object of this bill is to have the assignment *668 of the interest of R. G. King to his brother J. L. King declared void, as made to hinder and delay his creditors, and to have priorities and the right of all the parties settled.
The first question presented is, as to the bona fides of the transfer of the interest of R. G. King to Joe L. King. James King, sr., the grandfather, died July 18, 1867; the assignment as stated above, was made July 27, 1867. R. G. King and J. L. King are called upon to answer by special interrogatories, and do answer, denying the fraud in the most emphatic terms. The complainant must then meet these denials by the proof of two witnesses, or one witness and corroborating circumstances. The testimony shows clearly that R. G. King was heavily involved as a partner in mercantile establishments; that the assets of the firms were worthless, and that he had determined that he would pay none of these debts; that he was also indebted to Branner, and was equally determined not to pay his debt. It also appears that he was indebted to English, who- was his uncle by marriage we believe, and while he professes a willingness to pay this debt, yet he shows no disposition to make good his professions. It is shown by the proof that he came to East Tennessee from Alabama about August 1, 1867, and spoke of his purpose to let English have his interest in his grandfather’s estate, in payment of the debt, yet this was after the assumed sale of it to his brother Joe L. King. In reference to the debts of the firm or firms of which he seems to have been a member in the South, he *669 says in a letter, filed in this record, “I hav’nt got anything and don’t intend to have. anything,” and that he would not. pay these debts if he had a million. This letter was written in September, 1866. He seems to have. continued in this situation up to the time of the alleged assignment to his brother. It may here be remarked that 'R. G. King is shown to have been a keen, shrewd business man, of mature years and experience, while Joe L. King is shown to be a young man., who came out of the war with no means, is of lioderate business capacity, and yet seems _ to have got the means of the two in his own hands, and as we think, from the proof, was merely the agent for covering up the means of his -elder brother from his creditors. A circumstance in favor of this view is, that it is shown, that notwithstanding he claims everything, the older brother R. S. King keeps a power of attorney to manage the affairs of ' his younger brother, and comes to East Tennessee to look after this interest in his grandfather’s estate, under this power of attorney, thus giving him the means of receiving the profits and property as agent of Joe L. King nominally, but really for himself. * In a letter, of August the 9th, from Knoxville, R. G. King writes to complainant telling him that he learns that Branner was purposing to garnishee the executors on his interest in his grandfather’s estate, and says: ' “If you remember, I spoke to you in reference to having sold it to Joe before leaving’ home.” He then says, that up to this time hg- had been intending to pay *670 the English debt with this interest, that he also has a power of attorney to act in the matter, and that if Branner should garnishee them, this sale would hold good, and then requests him to speak to the other executors about it. That he may understand it, again in September, he writes to him, mainly urging him to defend and resist the Branner debt, which he seems determined to defeat; tells him, Joe L. King will defend him against Branner, and that if he (English) attempts to make his attachment good, it will strengthen Branner’s garnishment, and make it more difficult for Joe to make his title good, and if Bran-ner succeeds over Joe L. King, there would be “no chance for you (English) to hold your attachment.” Tells him he will hold him harmless on the Lyle debt should it not be made out of the other parties, but he was determined to let it go entirely through, it being then in suit, and then adds, “and don’t intend to put money in anyone’s hands for the payment of it till then, as I know I would never get a dollar from the firm of Summejr, Strong & King unless it is done in this way, and then with the debts of R>. G. King & Co. over' me, everything left me would be taken to satisfy them.”1 :
These letters with other facts too numerous to mention, show that it is the case of a man not very scrupulous, with an overwhelming debt, which he is determined never to pay, struggling by all possible means to shelter himself from his creditors and in this assignment endeavoring to carry out that purpose. ’ This is all strengthened by the fact that *671 the younger brother seems not to' have had any means of his own, nor to have remained in the South to attend to his own business, or look after his own interest, but answers from Lewis and Clarke county, Montana Territory, leaving R. G. King to look after these things for him. In addition, it is more than doubtful whether the “Schooner Elizabeth” was not the ■ property of the firm, composed nominally of the two brothers, and probably owned entirely in fact by R, G. King. This vessel pretended to be the consideration for the assignment, .was bought by the Kings for $400, and was offered in a year for $250, and probably at the date of the pretended sale was not worth more than the latter sum.
We do not see clearly what the interest of R. G. King in his grandfather’s estate was worth, but are left to believe it was probably worth several thousand dollars. These facts, taken in connection with the fact that the transfer was made in two weeks after the grandfather’s death; was made in Alabama, and R. G. King, who professes to have sold it by the early part of August, was here in person to attend to it, but not Joe L. who claimed it by purchase, leaves us no room to doubt that this assignment was col-orable, intended to cover this interest from the reach of creditors; and that in this, his younger brother participated. We therefore hold that the assignment is fraudulent and void as to creditors.
The - next question is as to the priority between Branner’s garnishment and English’s attachment. It is insisted by Branner’s counsel, that when his execu- *672 iion was placed in the hands of the sheriff, and the interest of II. G. King in the hands of executors, levied on by service of garnishment, that then his right by relation goes back to, the test of the execution, April 1, and overrides intervening attachments or assignments; at any rate, overrides the attachment of English levied the day before the service of garnishment. By secs. 3087 and 3101 of the Code, it appears that this process of garnishment is a means to be resorted to for sequestering and appropriating the effects of a debtor, where property liable to execution, sufficient to satisfy the execution cannot be found. It is a process additional to an execution, different from an execution, for if the same thing, the execution alone would serve the purpose. The garnishee, however is required to appear and answer. First. Whether he is or was indebted to the defendant at the time of the garnishment. Second. Whether he had under his control or in his possession any property debts or effects of the defendant at the time of service of the notice, or has at the time of answer-lug, or at any date between the service and time of answering. Third. Whether any other person to his knowledge or belief has such effects, etc.
Thus by section 3090, it is provided that all property debts, etc., in th.e posession or under the control of the garnishee, shall be liable to satisfy the plaintiff’s judgment, from the service of the notices, or from the time they come to his hands subsequent to notice and before judgment. It would seem evident from these sections that the garnishment is to take *673 effect on all it was intended by the statute to reach at the time of service of the notice and between that time and the judgment, and that its object is, first, to discover such effects as cannot be reached by the execution simply, and then to appropriate all such effects, and that the lien or right to such appropriation, so far as the garnishment fixes one, commences from the service of the garnishment, and is prospective entirely from that time, nor is any inquiry directed to be made as to any property or effects that have been in the hands of the party summoned, from date of the test of the writ up to the time of the service' of the notice. But this idea is made clear beyond dispute, we think, by section 3092, providing that if, from the answer of the garnishee, any property or effects, etc., is found under his control liable for the debt, judgment may be entered, and execution awarded for the property, money or effects, as the case may be, or so much thereof as will satisfy the plaintiff’s demand, etc. Now, if the property is levied on by virtue of the execution, and subject to all the incidents that property is subject to, which may or might be appropriated by a simple execution, why have another judgment and an execution? This shows that garnishment is a proceeding in addition to the execution in the hands of the officer, and by the other sections of the Code quoted, it is shown to be one which takes effect from the time of the service of notice, and has no retroactive operation whatever, and no relation to the test of the execution, but only to the service of the garnishee notice. In other words, the property is only ef- *674 fecfced by the garnishment when the notice is served. If property is discovered subject to the execution, then as a matter of course, such property would be subject •to the lien of the execution from its test, which would not be defeated by the intervention of the garnishment process, but as to property not subject to execution and sale under it, as in this case, the garnishment only fixes a lien from the time of the notice and takes it precisely as it is found at that time. This is involved in the idea of compelling the party garnisheed to discover what property or effects of the debtor he has or knows of, that such right as the debtor has in this property or effects at this time, shall be appropriated, and not such property and an additional right to override all liens that have been fastened on it before service of the notice, or assignments or transfer that may have been made. We might further illustrate these views from other provisions of the Code, and other reasoning drawn from the nature of the proceeding, but we deem this sufficient to sustain the view we have taken.
We therefore conclude that the lien of the attachment of English as shown in the answer of the garnishee King, is superior to that of the execution creditor Branner, because the attachment lien was prior to the service of the notice of garnishment on the execution. This disposes of the only practical questions raised in this case.
A decree will be entered here in accordance with this opinion.
*675 The defendant Branner will pay one-half of the costs of this court and the court below, and R. G. King and Joe L. King the balance.