## CECIL *v.* CARSON.

### (*Knoxville.* November 1st, 1887.)

EXECUTION. *Lien of relates to teste, as to all of debtor's personalty in the State.*

The general rule that the lien of an execution emanating from a court of record attaches to, and overreaches all transfers of, *personalty* owned ▪by the debtor at any time between the dates of its *teste* and its levy, applies not only to personalty situated in the *county* where the judgment was rendered, but to *all personalty* owned by the judgment debtor *during that interval,* and found and levied on *anywhere in the State.*

Code cited: §§ 3694, 3695 (M. & V.); §§ 2980, 2981 (T. & S.).

Cases cited and approved: Preston *v.* Surgoine, Peck, 72; Coffee *v.* Wray, 8 Yer., 466; Johnson *v.* Ball, 1 Yer., 291; Evans *v.* Barnes, 2 Swan, 393.

Cases cited and distinguished: Edwards *v.* Thompson, 85 Tenn., 720; Berry *v.* Clements, 9 Hum., 312; Cox *v.* Hodge, 1 Swan, 371.

---

### FROM SCOTT.

---

Appeal in error from Circuit Court of Scott County. D. K. YOUNG, J.

WASHBURN & TEMPLETON and YOUNG & PARKER for Cecil.

HENDERSON & JOUROLMON for Carson.

CALDWELL, J. While, sitting at Knoxville at the September Term, 1883, this Court pronounced a de-

Cecil *v.* Carson.

cree in favor of Sarah Goad against James Sharp. Execution thereon was issued to the Sheriff of Scott County, who levied the same on certain mules, horses, and other personal property; but on the 4th day of March, 1884, before sale could be made, John Carson brought this action of replevin in the Circuit Court of Scott County, claiming ownership of the property under a mortgage from James Sharp, the execution debtor.

On the trial of the case it was disclosed in the proof that the mortgage bore date November 19th, 1883, and was executed and registered before the Sheriff received the execution; and it was also shown that the execution was *tested* as of the second Monday in September, 1883, that being the first day of the term at which the decree was pronounced.

Upon these facts his Honor, the Circuit Judge, charged the jury as follows:

"You are instructed that this mortgage deed vested title to the property therein described in the plaintiff, and the defendant, Cecil, could not lawfully levy (on it) an execution in his hands against James Sharp, founded upon a judgment not rendered in this county nor registered here as required by statute." *　*　*　"The doctrine of the relation of an execution to the date of its *teste* is a mere fiction of law, and is founded in the idea of notice—the idea that the people of a county see and know what judgments go upon the public records of the county in which they live.

This doctrine of lien would, in this case, apply if the judgment against Sharp had been rendered in the Circuit or Chancery Court of Scott County, but does not apply to a judgment rendered by the Supreme Court of the State in Knox County."

Verdict and judgment being for Carson, the Sheriff, Cecil, appealed in error to this Court; and his counsel here assigns error upon the portions of the charge which we have just quoted.

The doctrine that the lien of an execution from a judgment or decree of a court of record relates to its *teste,* and attaches to all personalty owned by the debtor between the *teste* and levy of execution, so as to defeat all intermediate transfers, has been recognized and declared in a long and unbroken line of decisions of this Court, beginning as early as 1823, in the case of *Preston* v. *Surgoine,* and coming down to that of *Edwards* v. *Thompson,* decided at the last term. *Preston* v. *Surgoine,* Peck, 72; *Edwards* v. *Thompson,* 85 Tenn. (1 Pickle), 720, and citations.

Two exceptions have been made to the application of this rule in its broadest scope. They are:

*First*—If the record upon its face shows the judgment to have been rendered on a day subsequent to the *teste* of the execution, the lien will not defeat a *bona fide* sale or transfer of personal property made between the *teste* and the rendition of the judgment. *Berry* v. *Clements,* 9 Hum., 312; *Cox* v. *Hodge,* 1 Swan, 371.

*Second*—If the personalty be a growing crop

(which by statute is not subject to levy until the 15th of November), a sale thereof before that date, and after the *teste*, will pass the title to the purchaser free from the lien of the execution. 85 Tenn. (1 Pickle), 720.

It is not claimed that the present case falls within either of these exceptions.

The Trial Judge in his charge recognized the general doctrine of relation as we have stated it to be, but he confined it to executions running in the county in which the judgment or decree was rendered, and to those counties in which the judgment or decree might be registered.

This limitation, we presume, he based upon Sections 7 and 8 of Chapter 90 of Acts of 1831, which, as carried into the Code, are as follows:

"Judgments and decrees obtained in any court of record of this State in the county where the debtor resides at the time of rendition shall be a lien upon the debtor's land from the time the same were rendered." New Code, § 3694.

"If rendered in any other county than that in which the debtor resides, the lien shall take effect only from the time when a certified copy of the judgment or decree shall be registered in the county where the debtor resides, if he resides in the State, or, if not, then in the county where the land lies." New Code, § 3695.

These sections clearly do not authorize such a limitation, for they refer exclusively and alone to a *judgment lien upon land*, and have no kind of

reference to personal property, the lien of an execution upon such property, or the relation of that lien to the *teste* of the execution.

In the case of *Coffee* v. *Wray*, the Coroner of *Overton County* had in his hands several executions, issued on judgments rendered in that county, in favor of Coffee, and against the Sheriff, Matlock. At the same time he had other executions, issued on judgments rendered in *Davidson County*, in favor of the State Bank, and against the same Sheriff.

All the executions were levied on personal property of the common debtor; but the fund realized at the sale was not sufficient to satisfy all the executions in favor of either one of the creditors.

The question as to the proper application of the money come before this Court for decision. The bank claimed the money, and Coffee claimed it.

Judge Peck, in delivering the opinion of the Court, said:

"The executions of the bank, *although emanating upon judgments recovered in another county*, bound the personal property of the debtor equally with Coffee's, as this Court held in *Hickman* v. *Murfree*, Mart. & Yer. Rep., 26; and, being of the oldest *teste*, were entitled to be first satisfied. *They bound the personal property of Matlock from their teste.*" 8 Yer., 466.

The same, or a similar, question arose and was decided in *Johnson* v. *Ball, Garner and others*.

Here, judgment was rendered in the Supreme Court, at Nashville, against Garner, during the

term commencing on the first Monday in January, 1829. Two judgments were recorded against the same debtor in the County Court of Lincoln County, during the term commencing on the third Monday in January, 1829.

Executions on all these judgments went into the hands of the same Sheriff for collection, those on the judgments in the County Court being issued three days before that on the Supreme Court judgment.

The three executions were levied on the personal property of Garner, and sale was had by virtue thereof. The sum produced being insufficient to satisfy all the executions, the Sheriff sought the direction of this Court relative to the proper manner in which to apply the funds, as between the contending creditors.

Judge Catron, speaking for the Court, said:

"We are of opinion, and so direct, that the *fieri facias*, grounded upon the oldest judgment, where writs issued from different courts, bearing *teste* from the terms at which the judgments were rendered, are entitled to the first satisfaction—in a case like the present, when the writs are levied upon the personal property of the common defendant at the same time. The statute of 29 Edward II., Section 3, is not in force in Tennessee, and executions do relate to their *teste*." * * 1 Yer., 291.

Though no question seems to have been made upon that fact, it will be observed that an execu-

tion in this case, as that in 8th Yerger, issued to a county different from that in which the judgment, on which it was based, was rendered, and being so issued to a different county, did not prevent its relation to its *teste*.

In *Evans* v. *Barnes,* an execution issued on a judgment in *Rutherford County* was levied on six bales of cotton as the property of the execution debtor in *Davidson County.* Three days before the levy was made the debtor sold the cotton. The execution was issued on the same day that the debtor sold the cotton, but properly *tested* some three months prior to its issuance.

Upon these facts Judge Caruthers, who spoke for the Court, said:

" The execution was a lien from its *teste,* and overreached the title" of the purchaser. 2 Swan, 393.

On the authority of these cases, we hold that the lien of an execution, issued on a judgment or decree of this Court, or any other court of record in this State, relates to its *teste,* and attaches to all personalty owned by the execution debtor, in any county in the State, between the *teste* and the levy of the execution, defeating and overreaching all intermediate transfers—unless the case shall fall within one of the two exceptions mentioned in a former part of this opinion.

The charge of the Trial Judge, in limiting this lien and its relation to the *teste* to executions running in the county where the judgment or decree

may be rendered, or in those counties in which it may be registered, is erroneous.

For that error the judgment is reversed and the case remanded for a new trial.

Carson will pay the costs of appeal.