## CARMACK *v.* NICHOLS *et al.*

### (*Nashville*, December Term, 1943.)

Decided July 1, 1944.

On Rehearing August 15, 1944.

552

Jordan Stokes, Jr., of Nashville, for complainant-appellant.

W. D. Dodson, of Nashville, and Pride Tomlinson, of Columbia, for defendant-appellee.

Mr. Justice Chambliss delivered the opinion of the Court.

The determinative question presented on this appeal from a decree of the Chancellor, is whether or not appellant Carmack, a judgment creditor of Claude Nichols, one of the parties, may subject to the satisfaction of his judgment by (1) levy of execution, or (2) bill of discovery under the statute money taken from the person of Nichols, while a prisoner under arrest by police officers, when the money was not connected with the crime for which he had been arrested.

■ It must be conceded, as found by the Chancellor, that the point has been directly decided by this Court adversely to appellant in *Hill* v. *Hatch*, 99 Tenn., 39, 41 S. W., 349, 63 Am. St. Rep., 822, as to the levy, and in *Webb* v. *Jones*, 81 Tenn., 200, as to the bill of discovery. In *Hill* v. *Hatch* this Court said:

"In this case, an attachment issued at the instance of plaintiff in error, against the defendant in error, was levied by service of garnishment on certain members of the police force of Memphis. At the time of the service, the defendant in error was in their custody, under arrest, upon a criminal charge which had been preferred against him. Upon his arrest, these officers (whether of their own motion or under the police regulations of that city does not appear) removed from the person of the defendant in error, or required him to remove and deliver to them, certain articles of personal property of considerable value. This property was in no way connected with the charge under which his arrest was made, and it was this which the garnisheeing creditors sought to impound.

.  .  .

"The question presented by this record has received the attention of a number of courts of this country, and with regard to it there has been some diversity of judicial opinion. We are satisfied, however, that the better policy,

as well as the weight of authority, is with the ruling of the trial judge. In disposing of it, we do not deem it necessary to determine the right of a police officer, upon arresting a prisoner, of his own motion to take from him articles of value, or the reasonableness of municipal regulations which may authorize this to be done. It may be conceded for our present purpose that in either case this may be done, and that a wise precaution requires that it should be done. But when an officer of the law, acting under police rules or without them, takes from his prisoner personal property, either for its safe-keeping or to remove from his control that which he might use in effecting escape, a sound public policy, we think, requires that for the time it should be safe from seizure by civil process. We speak now of such property as is in no respect connected with the criminal charge. It would be a dangerous temptation to eager and sometimes unscrupulous creditors to resort to the machinery of the criminal courts against their reluctant debtors if it were once understood that whatever of value was taken from the person of the party arrested by the officer having him in charge could be at once impounded by the levy of an execution or attachment. Such a practice, we are sure, would likely be productive of results oppressive to the individual, and shocking to the moral sense of the community. . . ."

Able and diligent counsel for appellant challenges the soundness of this rule and its application on grounds of public policy; and seeks to show that cases cited in the opinion in *Hill* v. *Hatch* are not apt. However, we think it obvious that learned counsel realizes that appellant's contention in this case could not be sustained without a reversal, in effect, of *Hill* v. *Hatch*.

Here, Nichols was arrested and placed in jail on a charge unrelated to the money found on his person by the arresting officers, who took charge of this money, some $1,800 in currency, they say, pursuant to custom, for the purpose of (1) safekeeping against loss or robbery while in custody, and (2) subject to any legal claims thereto that might "turn up."

In this situation the sheriff attempted to levy on the money in the possession of an officer, acting under an execution issued out of a Maury County Court on a judgment for a much larger sum obtained by Carmack in that Court some time before. It may be conceded that this judgment was regular and that the procedure of the sheriff in the matter of the levy was also regular. The question of the right to subject to this levy this money taken from Nichols under the circumstances stated is, therefore, squarely presented. We do not deem it necessary to state further details of fact, so far as this issue is concerned.

The similarity in the essential facts to those appearing in *Hill* v. *Hatch* is apparent from the statement of fact in the opinion in that case, which we have above quoted. That in *Hill* v. *Hatch* an attachment was involved and here a levy of an execution is not material. The opinion in that case expressly applied the rule to any "seizure by civil process." The distinction suggested on the brief between an attachment and an execution, is one without legal difference.

While the opinion in *Hill* v. *Hatch* refers to but five sustaining cases from other jurisdictions, and one only to the contrary, numerous others are listed by the Annotator in 16 A. L. R., 378 (and see also 45 A. L. R., 574) following this statement of the rule:

"While there is a division of judicial opinion on the present subject, ["Money or other property taken from prisoner as subject of attachment, garnishment, or seizure under execution"] the majority of the cases hold that property taken from a prisoner by police officials is, while in the possession of such officials, not subject to attachment, garnishment, or execution; the reasons assigned generally being that the property is in the custody of the law, and that to hold otherwise would open the door to the possibility of grave abuses."

The Annotator then cites and comments on cases from Alaska, California, Georgia, Iowa, Massachusetts, Michigan, Missouri, Oregon, Pennsylvania, Texas, Washington and Tennessee, our case of *Hill* v. *Hatch, supra.*

It is noted that the matter has been regulated by statute in some jurisdictions, and most of the exceptions to this rule seem to be based on such statutes, or on a state of facts which take the cases from under the rule. In the case of *Dahms* v. *Sears*, 13 Or., 47, 11 P., 891, one of the cases cited in *Hill* v. *Hatch*, the Court said that a contrary rule would lead to oppression and abuse; that the object and purpose of an arrest would be perverted, and schemes and devices be resorted to by importunate creditors to enforce a payment of their demands that would outrage justice and the right to personal security. This case is among those cited in 23 C. J., p. 360, to support the text laying down the rule, without noted exception, that "Money taken from a prisoner is in the custody of the law, and not the subject of levy under attachment or execution." See, also, 33 C. J. S., Executions, sec. 55.

The rule and the reasons for it were thus well stated in *Commercial Exch. Bank* v. *McLeod*, 65 Iowa, 665, 19

N. W., 329, 330, 22 N. W., 919, 54 Am. Rep., 36, another case cited in *Hill* v. *Hatch*:

"When it was ascertained that the money and property were in no way connected with the offense charged, and were not held as evidence of the crime charged, the personal possession of the sheriff should be regarded as the personal possession of the prisoner, and the money and property should be no more liable to attachment than *if they were in the prisoner's pockets.* To hold otherwise would lead to unlawful and forceable search of the person under cover of criminal process as an aid to civil actions for the collection of debts. *It does not appear that such was the purpose of the prosecution in this case,* but the court was justified in finding that the money and property were taken from the defendant by force and without his consent, and, as it is not claimed that the money or property was in any way connected with the crime charged, *no advantage* should be taken of the defendant because the same was taken from his person by force and against his will. . . . The search was justifiable, and possibly the officer, in his discretion, could retain, for a time at least, the property, if thereby the defendant might be aided in effecting his escape, or if it would tend to connect him with the commission of a crime. *But the possession of the officer was the possession of the defendant.*" (Italics ours.)

*Hill* v. *Hatch, supra,* was dedided in 1899, the opinion being by BEARD, J., who, as has been seen, stated reasons for the holding in line with those in cases from other jurisdictions. In the forty-five years following no statutory enactment affecting the rule had been passed, and the ruling has been ever since the settled and accepted law of this jurisdiction.

While able counsel has presented contrary views with earnestness and force, we see no sufficient ground for now reversing this holding. Equities applicable to the present case are urged upon us, but "hard cases make bad laws" and general rules must be upheld despite possible injustice in special cases.

While in at least one jurisdiction the holding is made to turn on the issue of fact as to whether or not good faith is apparent, we are not prepared to follow this exceptional view. See *Closson* v. *Morrison*, 47 N. H., 482, 93 Am. Dec., 459. This case was commented on and disapproved in the opinion in *Hill* v. *Hatch*.

Nor is the Chancellor in error in denying the right to reach and subject the fund by a bill of discovery. This question, also, has been directly determined against this right by the holding of this Court in *Webb* v. *Jones*, 81 Tenn., 200, cited approvingly in our more recent case of *North* v. *Puckett*, 164 Tenn., 100, 106, 46 S. W. (2d), 73, 81 A. L. R., 1107. Moreover, it would seem that, when the "discovery" sought is quite apparently directed at specific property, here money taken from a prisoner, in possession of the arresting officer, which we hold a creditor may not reach and subject by civil process, to entertain the bill of discovery would be a vain and idle thing. The principle referred to in *Jourolmon* v. *Massengill*, 86 Tenn., 81, at page 118, 5 S. W., 719, at page 731, quoting *Ewing* v. *Cantrell*, 19 Tenn., 364, seems applicable, that is, "The jurisdiction of the chancery court, under the statute against fraudulent conveyances, being ancillary, namely, to remove impediments to executions at law, will be exercised only where the impediment to be removed affects things which might be reached by execution but for the impediment; never, in any case, where the property sought to be made liable in equity could not be

reached at law, even though no obstruction existed."
Nothing in the Act of 1832, brought into the Code as
Section 10353, appears to us to affect this principle.

■ The Chancellor correctly adjudged the rights of
appellant as to the liquor recovered from Nichols by the
officers, subject to such superior claim thereon as may be
established in favor of the proper State official. A prose-
cution was pending against Nichols for unlawful posses-
sion of the liquor involved in his residence from which
it was taken by officers. The Chancellor said:

"If it is found upon the trial in the criminal court of
Davidson County that said Nichols, was in the lawful
possession of said liquors, the complainant in this cause
has acquired a lien upon the same by the levy of said
execution by garnishment, but if he is found to have been
in possession unlawfully, even though he is acquitted
because of an illegal search, or for lack of legal evidence
upon which to convict him, then the Commissioner of
Finance and Taxation may intervene by petition assert-
ing his jurisdiction to possess the liquors and sell them
for the benefit of the Treasury. Public Acts of 1939, Chap.
49, Sec. 22, [19], Code Supp., 6648, 22 [Code Supp., sec.
6648.19]; *Casone* v. *State*, 176 Tenn., 279 [140 S. W. (2d),
1081]."

In the recent case cited by the Chancellor the pro-
cedure which he decrees is approved. The question ar-
gued on the brief of whether or not the possession of
the liquor by Nichols was legal is properly left to the
determination of the Criminal Court.

We find no error and the decree is affirmed.

ON PETITION TO REHEAR.

It was held in this cause, affirming the Chancellor, that
the execution could not be validly levied on the money

in the possession of the arresting officers, which had been taken from the person of the debtor upon his arrest by these officers on a criminal charge wholly disconnected with the money in question; and, further, that a bill of discovery directed to this particular fund could not be sustained.

A petition to rehear seeks to have the Court so modify or amend its opinion as to recognize, nevertheless, an execution lien on this money, with the effect of impounding the money and holding it subject to a lien in favor of the execution creditor enforceable upon the discharge of the prisoner-defendant from custody and the return to him thereof.

The theory advanced is, as we understand, that under well settled law an execution relates to its *teste*, or at least to the date of its issuance to the sheriff, and that the continuity of this lien which had attached to the money has not been broken by its present immunity from levy; that the lien continues and may be enforced whenever the money becomes free from the immunity protecting it from levy decreed in this cause.

As above indicated, this Court fully recognizes the law in this jurisdiction to be that, generally, but subject to exceptions to be noted, the lien of an execution lien relates to its *teste*, and attaches to all the personal property of the defendant debtor within the County of the issuance of the execution, and that this lien may fasten on money of the debtor; but it is also well settled that the lien attaches to money, or other personal property, *only when the specific property is subject to levy.* If it is not subject to be levied on, no lien attaches thereto. The lien exists only in connection with the execution and only when the property is subject to levy. *Edwards* v. *Thompson*, 85 Tenn., 720, 4 S. W., 913, 4 Am. St. Rep.,

807. And see Volume 7, Michie's Digest, p. 68, where this excerpt from the case above cited is quoted:

"If for any reason the property of the debtor cannot be seized under execution, it cannot be affected by the usual lien or the doctrine of relation. If the property is absolutely protected from execution under statutory exemption laws, of course there is no lien upon it. So if it is free from execution during a specified period, it is free from the lien during the same period."

That was a case of growing crops free from execution for a statutorily fixed period. This case is cited for this holding by Am. & Eng. Ency. of Law (see notes), Volume XI, p. 673, along with *Cecil* v. *Carson*, 86 Tenn., 139, 5 S. W., 532, and *Stahlman* v. *Watson* (Tenn. Ch. App.), 39 S. W., 1055. Cases holding to the contrary rule are cited, but in this jurisdiction the rule is as stated.

We have held in the instant case, and now re-affirm, that the money here involved was and is "free from execution," and it follows that "there is no lien upon it." If it should be conceded that there was ever a lien upon it, the continuity of such lien was definitely broken when this money was taken from the prisoner by the officers and the lien no longer exists.

But does it here appear that this money was ever previously subject to be levied upon and therefore at any previous time subject to the lien? We think not.

So far as disclosed by this record, this money was never, since it became the property of the debtor, kept, deposited or otherwise held than upon his person, in the manner in which money is customarily carried, that is, in the pocket. While money may be the subject of lien and may be seized under execution under some circumstances and conditions, illustrated in the leading case of *Dolby* v. *Mullins*, 22 Tenn., 437, 30 Am. Dec., 180, and

other cases relied on by petitioner such as *English* v. *King*, 57 Tenn., 666, 672-674, "money in the hands of a debtor is not subject to be seized under execution," and is, therefore, not affected by lien. *Maples* v. *Rawlins*, 105 Tenn., 457, at page 458, 58 S. W., 644, at page 645, 80 Am. St. Rep., 903. This is an exception to the rule that money may be seized under an execution.

This exception to the general rule that personal property, which includes money, may not be levied on and seized under execution when on the person of the debtor, stated in *Maples* v. *Rawlins*, *supra*, is well established in England and followed in the Courts of this country, and is grounded on the reason that such a taking would lead to breaches of the peace and physical conflicts and the violation of constitutional rights not permissible in the enforcement of civil process. The only recognized exception to this exception is when the levy and seizure may be effected without physical conflict and breach of the peace. See text of 33 C. J. S., Executions, sec. 19, pp. 153, 154, and notes, citing, among other cases, *Mack* v. *Parks*, 8 Gray (Mass.), 517, 69 Am. Dec., 267, and *Green* v. *Palmer*, 15 Cal., 411, 76 Am. Dec., 492; also, 21 Am. Jur., p. 198, and cases cited in note 6.

Moreover, as applicable to the facts of the instant case, it must be borne in mind that the other rule we have followed in this case, that money taken from one under arrest may not be seized under an execution in the hands of the officer who has taken it from his person, rests on the principle that no advantage may be secured founded on this forceful taking from the person, where it was secure from taking by or under civil process. The reason why it may not be seized in the hands of the officer, is that in the bodily or physical possession of the debtor it was in a position when taken by the officer of protection

or immunity from seizure under execution. If under other circumstances the money of a debtor comes to the hands of an officer who has an execution in his hands against the owner, it may be applied to satisfaction of such execution. *Dolby* v. *Mullins*, 22 Tenn., 437, 30 Am. Dec., 180; *Cooper* v. *Potter*, 175 Tenn., 664, 137 S. W. (2d), 276. So, if it be in the hands of a third person that person may be garnished. See *English* v. *King*, *supra*. The opinion of Mr. Justice McKinney, in the recent case of *Cooper* v. *Potter*, *supra*, cites, among cases holding that an officer who has money, collected for a plaintiff under an execution, may apply such money to the satisfaction of an execution in his hands against this plaintiff, *Maples* v. *Rawlins*, *supra*, wherein, in the same paragraph, the rule above quoted from that case was stated, that "money in the hands of a debtor is not subject to be seized under execution."

Language quoted and italicised in our opinion, 181 S. W. (2d), 979, from the leading case of *Commercial Exch. Bank* v. *McLeod*, 65 Iowa, 665, 19 N. W., 329, 22 N. W., 919, 54 Am. Rep., 36, bears directly on this point. The Court reasons that money taken from the prisoner, in no way connected with the offense charged, should not be subjected to seizure under execution *because* the personal possession of the sheriff "should be regarded as the personal possession of the prisoner, and the money and property should be no more liable to attachment than if they were in the prisoner's pockets." And again, the quotation concludes, "But the possession of the officer was the possession of the defendant." The Court rightly assumes the rule to be that when property is in the personal possession, in the "pockets" of the

owner-debtor, it is not subject to seizure under execution, as stated in *Maple v. Rawlins, supra.*

Since, therefore, this money is not now subject to levy, and is not shown to have been subject to be levied on at any time since issuance of the execution, no lien either now rests on it, or has at any previous time attached thereto. It results that none can be decreed and the petition must be dismissed.