**In re Emory Gettice SKINNER, Jr., Debtor.**

**Emory Gettice SKINNER, Jr. and George W. Stevenson, Trustee, Plaintiffs,**

v.

**FIRST UNION NATIONAL BANK and Sheriff of Humphreys County, in his official capacity, Defendants.**

Bankruptcy No. 97–28540–L.
Adversary No. 97–0848.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Sept. 23, 1997.

Irving S. Zeitlin, Memphis, TN, for Debtor/Plaintiff.

Roger A. Stone, Memphis, TN, for Defendant First Union National Bank.

## MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

JENNIE D. LATTA, Bankruptcy Judge.

Before the court are cross motions for summary judgment filed by the plaintiff, Emory Gettice Skinner, Jr. ("Skinner") and the defendant, First Union National Bank ("First Union"). The plaintiff's complaint, as amended, alleges that he is entitled to the return of his 1989 GMC Sierra pickup truck which is in the possession of the defendant Sheriff of Humphreys County ("Sheriff") pursuant to a writ of execution issued for the benefit of First Union; that he may avoid the judicial lien of First Union; and that any purported voluntary transfer of his interest in the truck to First Union may be avoided as a preferential transfer. First Union avers that the debtor voluntarily transferred title

in the truck to First Union prior to the commencement of his bankruptcy case and thus is not entitled to compel the turnover of the truck. The Sheriff has neither answered the complaint nor responded to the plaintiff's motion for summary judgment. For the reasons stated below, the court will grant the plaintiff's motion for summary judgment and deny the defendant's motion. This memorandum shall constitute findings of fact and conclusions of law in accordance with FED. R. BANKR.P. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (F) and (O).

## I. FACTS

The undisputed facts may be summarized as follows. The debtor is indebted to First Union as the result of credit card charges. The debt was reduced to judgment in the amount of $8,763.58 plus court costs on November 13, 1995 in the General Sessions Court of Shelby County, Tennessee. In April of 1997, First Union caused a writ of execution on the judgment to be issued directing the Sheriff to levy upon the debtor's truck. The Sheriff took possession of the truck in late April or early May of 1997. On May 16, 1997, Skinner filed a motion to quash the execution which was denied by the General Sessions court. The parties believe that the truck remains in the possession of the Sheriff pending the outcome of this proceeding.

The debtor commenced his bankruptcy case on June 13, 1997, by filing a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. The debtor admits that a short time prior to the filing of his bankruptcy case, he signed the back of the certificate of title to the truck as "Seller" and delivered it to First Union. On July 28, 1997, the debtor commenced this adversary proceeding by filing his "Plaintiff's Complaint to Compel Turnover of Certain Property From Defendant And to Set Aside Transfer Under 11 U.S.C. § 544 And Avoid Judicial Lien Under 11 U.S.C. § 522." The debtor subsequently amended his complaint to add allegations that the Sheriff is a custodian and is required to turn over the vehicle pursuant to 11 U.S.C. §§ 543, 541(1)(a) and 542; that the vehicle is subject to turnover pursuant to

11 U.S.C. § 542; that if the judicial lien is considered a statutory lien, it is subject to avoidance pursuant to 11 U.S.C. § 545; and that if the signing of the back of the certificate of title is considered a "transfer," the transfer is subject to avoidance pursuant to 11 U.S.C. § 547.

## II. DISCUSSION

### A. Is the Debtor Entitled to the Return of the Vehicle?

#### 1. Is the Sheriff the "Custodian" of the Vehicle?

The term "custodian" is defined for purposes of the Bankruptcy Code at section 101(11) as follows:

(11) "custodian" means—

(A) receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

██ The Sheriff is not a receiver or trustee of the debtor's property; he or she is not an assignee under a general assignment for the benefit of the debtor's creditors; he or she has not been appointed to take charge of the debtor's property for the purpose of general administration of such property for the benefit of the debtor's creditors. If the Sheriff is a custodian, it is because he or she is an agent appointed to take charge of the property of the debtor for the purpose of enforcing a lien against such property.

#### 2. Is There a Lien Against the Debtor's Vehicle which the Sheriff Was Appointed to Enforce?

In order to determine whether there is lien upon the debtor's vehicle which it is the

Sheriff's duty to enforce, it is first necessary to briefly review the law in Tennessee concerning the collection of judgments. The writ of execution is the customary vehicle for enforcing money judgments in Tennessee. *Keep Fresh Filters, Inc. v. Reguli,* 888 S.W.2d 437, 443 (Tenn.Ct.App.1994). *See* TENN.CODE. ANN. § 26–1–103. The writ of execution is "an order directing the sheriff to levy upon and sell the judgment debtor's property identified in the writ that is not statutorily exempt." *Keep Fresh Filters,* 888 S.W.2d at 443. The modern writ of execution is derived from the common law *writ of fieri facias.* John C. Baugh, *Enforcement of Judgments In Tennessee,* 22 TENN. L.REV. 873, 873 (1953). The term *"fieri facias"* means literally, "cause (it) to be done." BLACKS LAW DICTIONARY 565 (5th ed.1979). The writ commands the sheriff to levy and make the amount of the judgment from the goods and chattels of the judgment debtor. *Keep Fresh Filters,* 888 S.W.2d at 443. Thus the sheriff is authorized by the writ not only to levy upon the goods of the judgment debtor, but also to sell them for the benefit of the judgment creditor. *See* 12 TENN. JURIS., *Executions* § 33, p. 124 (1984).

A levy of execution is:

the officer's act of appropriating or singling-out the debtor's property for the satisfaction of a debt. It is accomplished by the officer's asserting dominion over the property by actually taking possession of it or doing something that amounts to the same thing. A levy on personal property results in the actual divestiture of the judgment debtor's title. It places the debtor's personal property in the custody of the law, and the sheriff acquires a special interest in the property.

*Keep Fresh Filters,* 888 S.W.2d at 443–44 (citations omitted). Upon levy, the property of the judgment debtor is said to be *in custodia legis,* that is, "in the custody or keeping of the law." BLACK'S LAW DICTIONARY 691 (5th ed.1979). The sheriff's duties with respect to executions, levies and sales arise from his office and are strictly regulated by statute. *See* TENN.CODE ANN. § 8–8–201.

For purposes of the Bankruptcy Code, a "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). According to the Uniform Commercial Code, a "lien creditor" is a "creditor who has acquired a lien on property involved by attachment, levy, or the like." TENN.CODE ANN. § 47–9–301(3).

Under Tennessee law, there is no statutorily created judgment or execution lien with respect to the debtor's personal property that is subject to execution. Judgment liens are statutorily provided with respect to the debtor's land and certain types of personal property not subject to execution.

Judgments or decrees obtained after July 1, 1967, from any court of record, and judgments in excess of $500 obtained from and after July 1, 1969, from any court of general sessions, become liens upon the debtor's land from the time a certified copy of the judgment is registered in the lien book in the register's office of the county where the land is located. TENN.CODE ANN. § 25–5–101(b). An execution lien may be obtained upon stock, choses in action, or other personal property, not liable at law, by registering an abstract or memorandum of the judgment in the county where the defendant resides within sixty days from the rendition of the judgment. TENN.CODE ANN. § 25–5–103. The Tennessee Code contains no similar provision for obtaining a judgment or execution lien upon the personalty of the defendant which is liable at law.

Nevertheless, it appears that pursuant to the common law of the state of Tennessee, an execution lien attaches to the personalty of the defendant from the date a writ of execution is issued by a court of record. *See* 12 TENN. JURIS. *Execution* § 15, p. 105 (1984). The early case of *Stahlman v. Watson,* 39 S.W. 1055 (Tenn.Ch.App.1897), acknowledges confusion concerning whether or not a judgment is itself a lien on personalty under Tennessee statutes. That decision provides a useful summary of the history of the law relating to liens arising from judgments and executions. In part it states:

[W]e find that prior to 13 Edw. I. c. 18, lands and tenements were not subject to

be taken in execution at the suit of a common person; that by that act such property was subject to the payment of debts, and that this was effectuated by the writ of elegit, by which all the goods were delivered to the creditor at their true value, and one-half of his lands were extended or placed in the possession of the creditor until the rents and profits paid the debt. By construction of the English courts, it was held that the judgment was a lien upon such lands from the date of its rendition, or the first day of the term of the court at which it was rendered. This relation was a fiction of law worked out by the construction of the courts. It was further held that such judgments were not a lien upon personalty, but that the elegit was a lien on personalty from the date of its teste.[1]

The different conditions existing in this country at the time of its early settlement, on account of the character of the lands, being wild and uncultivated, rendered the writ of elegit ineffective for the collection of debts; and to remedy this a statute was enacted of 5 Geo. II. c. 7, which provided for the taking of lands under the writ of fieri facias, and it was held in the case above referred to of *Porter's Lessee v. Cocke* that this did not change the lien either with regard to realty or personalty; that the lien as to personalty still existed, and arose only under the execution and related to its teste, and the lien as to realty related to the date of the judgment.... Such was the state of the statutory law at the time of the adoption of the Code of 1858. It will thus be seen that under this legislation a judgment was a lien on real estate alone, and dated from its rendition, and had been limited in duration to 12 months;[2] that as to personalty, the judgment was no lien; but as to this class of property the lien arose only under the execution and related to its teste.... And it will further be noted that these were, therefore, not created by the legislation we find on our statute books prior to the Code, but were simply recognized, regulated, and limited by the statutory enactments above referred to; the lien as to real estate being limited, in the first place, as to duration, to a period, of one year, when it had hitherto been indefinite, and both the lien as to realty and personalty being controlled in certain cases by the requirement of registration.

*Stahlman*, 39 S.W. at 1057–58 (citing *Porter's Lessee v. Cocke,* Peck (Tenn.) 24, and authorities there cited). The *Stahlman* court concludes that the enactment of the Code of 1858 did not materially change the law as it existed prior to codification, and that "the lien as to personalty remained as it stood before the adoption of the Code, and arose, not from a judgment, but from the execution, and related to the teste." *Id.* at 1059. That court further states, however, "Although this lien of the execution has been recognized and regulated by statute, yet it has always been, and is still, spoken of by the courts as a fiction of the law." *Id.*

██ Unlike executions issued by a court of record, with respect to executions issued by a court of general sessions, no lien is created until the sheriff actually levies on the property. *Keep Fresh Filters,* 888 S.W.2d at 443 (citing *Hammock v. Qualls,* 139 Tenn. 388, 391–92, 201 S.W. 517 (1918)).

To summarize, it appears that a levy upon the personal property of a judgment debtor vests title to that property in the sheriff subject to an execution lien created for the benefit of the judgment creditor.[3] The execution lien, with respect to judgments issued

---

1. "Teste" means dated or witnessed. Historically court executions were tested as of the first day of the term in which the execution issued, except that general sessions court executions were tested as of the day of issuance. Note, *Enforcing Money Judgments in Tennessee,* 4 MEM. ST. UNIV. L.REV. 65, 71 (1973). Now, all court executions are tested as of the day of issuance. TENN.CODE ANN. § 26–1–109.

2. In 1986, the duration of the judgment lien was extended to three years from the date of the entry of the judgment. *See* TENN.CODE ANN. § 25–5–105(a).

3. The Court does not consider or decide what interest the debtor retains with respect to the truck or whether that interest became property of the bankruptcy estate upon the filing of the debtor's petition. *See* 11 U.S.C. § 541(a).

by the courts of general sessions, arises at the time of the levy.

■ The judgment obtained by First Union was issued by the General Sessions Court of Shelby County, Tennessee. The writ of execution relied upon by First Union was issued by the same court. The Sheriff levied upon the debtor's truck in late April or early May of 1997. Under the above authorities, as of the day of levy, the Sheriff holds title to the truck subject to an execution lien in favor of First Union.

### 3. May a Sheriff Who Does Not Hold Property for the Benefit of all a Debtor's Creditors be a Custodian?

The Court has discovered only one other decision which discusses the question whether a sheriff in possession of a debtor's property may be a custodian for purposes of the Bankruptcy Code, *In re Taylor's of St. Petersburg, Inc.*, 110 B.R. 593 (Bankr.M.D.Fla. 1990). In that case, Chief Bankruptcy Judge Alexander L. Paskay concluded that a sheriff was not a custodian for purposes of the Bankruptcy Code for two reasons: first, because the sheriff in that case was acting on behalf of only one creditor, not for the benefit of all the debtor's creditors; and second, because the sheriff in that case seized property on a writ of prejudgment attachment. Because no judgment had been entered at the time of the attachment, Judge Paskay concluded there was no vested lien or existing lien for the sheriff to enforce. *Id.* at 596.

The present case is factually distinguishable from the case considered by Judge Paskay. In *Taylor's of St. Petersburg*, as was stated, the sheriff took possession of the debtor's property pursuant to a pre-judgment attachment. No judgment was entered and no lien attached prior to the filing of that debtor's bankruptcy petition. In this case, by contrast, First Union had obtained an execution lien as the result of the sheriff's levy prior to the filing of the debtor's bankruptcy petition.

■ Further, the Court most respectfully disagrees with the conclusion of Judge Paskay that a custodian must take charge of the debtor's property for the benefit of all of a debtor's creditors. Nothing in the Bankruptcy Code's definition of custodian requires that a custodian hold property for the benefit of all the debtor's creditors. In fact, the plain words of the statute indicate that a custodian includes an agent authorized to take charge of property of the debtor for the purpose of enforcing *a lien* against such property. It would be unusual for all creditors to hold a single lien upon the debtor's property. When the words of a statute are plain, the task of statutory interpretation is at an end. *See Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir.1997).

From all of the above, the Court concludes that the Sheriff is a custodian for purposes of the Bankruptcy Code.

### 4. What are the Sheriff's Duties with Respect to the Vehicle as the Result of the Bankruptcy Case?

■ The determination that the Sheriff is a custodian for purposes of Bankruptcy Code section 543 does not end the questions which must be answered before it is determined that the debtor is entitled to the return of the vehicle. It must next be determined what the duties of the custodian are with respect to the vehicle as a result of the filing of the debtor's bankruptcy petition.

■ Section 543(b)(1) sets forth the duty of a custodian to deliver property to the trustee:

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case.

11 U.S.C. § 543(b)(1). "'Property of the debtor' includes property that was property of the debtor at the time the custodian took the property, but title to which subsequently passed to the custodian." 5 COLLIER ON BANKRUPTCY ¶ 543.01[1] n. 6 (15th ed. rev. 1997). Thus, even though under Tennessee law, title to the debtor's truck passed to the Sheriff upon levy, the Sheriff, who now has

knowledge of the commencement of the debtor's bankruptcy case, is nevertheless obligated to deliver the truck to the trustee for the use and benefit of the debtor. The Sheriff is entitled, however, to the payment of reasonable compensation for services rendered and costs and expenses incurred in connection with the performance of his duties under the writ of execution. *See* 11 U.S.C. § 543(c)(2). Further, in the event the truck has been sold, the Sheriff is obligated to file an accounting concerning the disposition of the property. 11 U.S.C. § 543(b)(2).

5. *In the Alternative, Is the Debtor Entitled to the Return of the Vehicle Pursuant to Section 542*

The debtor pleads in the alternative that he is entitled to the return of his truck pursuant to Bankruptcy Code section 542. In pertinent part, that section provides:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

By its terms, section 542(a) only applies to property held by an entity other than a custodian. Because the Court has concluded that the Sheriff is a custodian, the Court further concludes that the debtor is not entitled to turnover under section 542.

B. Is the Debtor Entitled to Avoid the Creditor's Execution Lien?

1. *Is the Execution Lien Avoidable as a Judicial Lien?*

■ The plaintiff Skinner asserts that he is entitled to avoid the "judicial" lien of First Union under Bankruptcy Code section 522, 544 or 545. Section 522(f)(1)(A) provides:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been enti-

tled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt to a [spouse, former spouse, or child of the debtor].

A "judicial lien" is defined for purposes of the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The execution lien held by First Union arose as the result of a levy of execution. It thus is a "judicial lien" and may be avoided by the debtor to the extent that such lien impairs an exemption to which the debtor would otherwise have been entitled. At Schedule C—Property Claimed as Exempt, the debtor claimed an exemption in the 1989 GMC½ ton Sierra pickup truck in the amount of $3,435.00. No objection was timely filed with respect to the debtor's claimed exemptions. *See* 11 U.S.C. § 522(1); FED. R. BANKR.P. 4003(b); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992). The debtor is entitled to avoid the lien of First Union to the extent of $3,435.00.

2. *Is the Execution Lien Avoidable Under Section 544?*

■ The execution lien of First Union is avoidable in part because it is a judicial lien. The debtor also asserts that the lien is avoidable under Bankruptcy Code section 544. That section provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement

of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists.

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

Section 544 is the so-called "strong arm clause." Statutory history explains the purpose of that section as follows:

Subsection (a) is the "strong arm clause" of current law, now found at Bankruptcy Act § 70c. It gives the trustee the rights of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition; of a creditor with a writ of execution against the property of the debtor unsatisfied as of the date of the petition; and a bona fide purchaser of the real property of the debtor as of the date of the petition. "Simple contract" as used here is derived from Bankruptcy Act § 60a(4). The third status, that of bona fide purchaser of real property, is new.

Subsection (b) is derived from current section 10e. It gives the trustee the rights of actual unsecured creditors under applicable law to avoid transfers. It follows *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931), and overrules those cases that hold section 70e gives the trustee the rights of secured creditors.

HR Rep. No. 595, 95th Cong., 1st Sess. 370–371 (1977); S. Rep. 989, 95th Cong., 2d Sess. 85 (1978) (reprinted in NORTON BANKRUPTCY LAW AND PRACTICE 2D, BANKRUPTCY CODE (pamphlet ed.1996–97)).

As discussed above, the Sheriff's levy upon the debtor's truck divested the debtor of title and impressed the truck with an execution lien for the benefit of First Union. Under Tennessee law, once title to the truck was transferred to the Sheriff and the execution lien of First Union attached, no other judicial lien or execution lien could obtain priority over it. *See Stahlman v. Watson*, 39 S.W. at 1060 (citing *Cecil v. Carson*, 86 Tenn. 139, 5 S.W. 532); *see also Keep Fresh Filters*, 888 S.W.2d at 442–46. "The actual levy of a justice's execution on personalty prior to the levy of an execution from a court of record will give the justice's execution priority." Baugh, *supra*, at 874–75.

The debtor has not asserted that the levy is avoidable as a fraudulent transfer under applicable Tennessee statutes. *See* TENN. CODE ANN. §§ 66–3–101 et seq. and 66–3–301 et. seq.

### 3. Is the Execution Lien Also Avoidable as a Statutory Lien?

 The execution lien of First Union is avoidable in part because it is a judicial lien. The debtor also asserts that the lien is avoidable under section 545 of the Bankruptcy Code. That section provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective against the debtor—

(A) when a case under this title concerning the debtor is commenced;

(B) when an insolvency proceeding other than under this title concerning the debtor is commenced;

(C) when a custodian is appointed or authorized to take or takes possession;

(D) when the debtor becomes insolvent;

(E) when the debtor's financial condition fails to meet a specified standard; or

(F) at the time of an execution against property of the debtor levied at the

instance of an entity other than the holder of such statutory lien.

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;

(3) is for rent; or

(4) is a lien for distress for rent.

11 U.S.C. § 545.

■ A "statutory lien" is defined as a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress of rent, whether or not statutory, but does not include security interest or *judicial lien*, whether or not such interest or lien is provided by or is dependent on a statute or whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53) (emphasis added). Under the Bankruptcy Code the terms "judicial lien" and "statutory lien" are mutually exclusive. A judicial lien, such as that held by First Union, cannot also be a statutory lien. The debtor is not entitled to avoid the balance of First Union's lien under section 545.

## C. Was the Debtor's Attempted Voluntary Transfer of His Truck Effective?

The debtor further asserts that his purported voluntary transfer of the title to his truck to First Union is avoidable as a preferential transfer. The Court need not reach the issue of whether the attempted transfer was a voidable preferential transfer, because at the time of the attempted transfer, the debtor no longer held title to the truck. As discussed above, as the result of the levy upon the truck, title to the truck was divested of the debtor and vested in the Sheriff. From that point, the debtor no longer had the ability to transfer title to anyone.

### D. Conclusion

Summary judgment under FED.R.CIV.P. 56(c), made applicable to bankruptcy adversary proceedings by FED. R. BANKR.P. 7056, is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). " 'Inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The parties have submitted this matter to the Court on stipulated facts. The debtor has demonstrated that he is entitled to judgment as a matter of law with respect to the trustee's right to the return of the truck for the use and benefit of the debtor and with respect to his right to avoid the lien of First Union to the extent that it impairs his claimed exemption in the amount of $3,435.00, but not otherwise.

The Court will enter a separate order consistent with the conclusions reached in this opinion.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the court are cross motions for summary judgement filed by the plaintiff, Emory Gettice Skinner, Jr. ("Skinner") and the defendant, First Union National Bank ("First Union"). Based upon the Court's Memorandum Opinion on Cross Motions for Summary Judgement it is

ORDERED AND NOTICE IS GIVEN THAT:

1. The motion for summary judgment filed on behalf of the debtor is granted as follows:

a. The defendant Sheriff of Humphreys County is ordered to immediately deliver to the debtor the 1989 GMC Sierra pickup truck, VIN 1GTDC14H8KE534321. The truck shall become property of the bankruptcy estate, but shall remain in the possession of the debtor.

b. A hearing is set for **October 21, 1997 at 1:30 p.m., Courtroom 645, 200 Jefferson Avenue, Memphis, Tennessee** for the defendant Sheriff of Humphreys County to present proof concerning reasonable com-

pensation, and costs and expenses, due to him or her pursuant to 11 U.S.C. § 543.

c. The judicial lien of First Union National Bank with respect to the 1989 GMC Sierra pickup truck is avoided to the extent of $3,435.00.

2. The motion for summary judgment filed on behalf of First Union National Bank is denied.