Caruthebs, J.,
delivered the opinion of the court.
This is a j>resentment for gaming. The ji7ry found a special verdict in these words: “We find that the defendant, with some six or more other gentlemen, played at a game called ten pins, or handicap. In this game no one played to beat any other gentleman, but each one had assigned to him a certain number of pins to be got with a certain number of balls, some more and some less, according as they were considered good or bad players. If the player did not get the number of pins assigned him, he was to , treat to a bottle of champaigne. The defendant did play at this game, in Maury county, in less than six months preceding'the finding of this presentment, and did sometimes, on failing to get the number of pins allotted to him, treat to a bottle of champaigne, and sometimes he did not. It was agreed by the parties at the commencement of the playing, that the treat was a voluntary thing, and no one need to do so unless he was *289 perfectly willing. The jury further find, that the defendant and the other gentlemen engaged in this- play,, did not believe it to be gaining.”
The circuit judge decided that the facts found by the jury made out a case of gaming, and pronounced judgment accordingly. . Defendant appealed to this court.
What is gaming ? It is defined by the Act of 1799, ch. 8, § 2, to be a playing “ at any match or matches at cards, dice, billiards, or any other game of hazard or address, for money or other valuable thing.” By the same section to “encourage or promote,” is the same offense; and so is betting upon such hazards, by subsequent acts. But this offense being a misdemeanor, all persons who aid, encourage, advise or promote them, would be principal offenders by the principles of the common law, without any statute on the subject.
In the case of The State vs. Smith, 2 Yer. 272, the court lay down several rules on this subject, well worth attention, and settle the definition of the offense very clearly. The evils of gaming are there depicted by Judge Catron in their true colors, and are well calculated to impress upon all judges, legislators and good citizens, that it is an important duty to do all in their power to expel it from society, as a practice productive of the most alarming evils, and destructive of the morals of the community. It is not intended to brand this particular case with odium, but the example is the worse because it tends to take off the disgrace of gambling, and engenders a passion for the vice in circles it would never enter, if left to its own low and degraded haunts. But where the livery of gentlemen is thrown upon it, there is no security against its ravages. The most promising youths of the land are taken in its snares, and become victims of the *290 absorbing passion. It is the mother of intemperance, idleness, and'numberless concomitant evils. It undermines morals, industry.and honesty. No man’s sons are secure where it prevails in the circles in which they move. Those virtues and habits which lie at the foundation of private happiness and public prosperity, all fall before this fell destroyer. Gentlemen should give no countenance to a practice fraught with such fearful consequences. It stands next to intemperance, which it generally accompanies, in its baneful influences upon society. The legislature, being deeply impressed with the necessity of eradicating this vice, has, from time to time, accumulated these statutes on the subject, as evasions and new devices would spring up. It is not supposed that many, who yield to the indulgence for sport and amusement, and certainly not in the case before us, as appears by the special verdict, have any criminal or unworthy motive, or would do any thing they considered dishonorable. It is often thoughtlessly done, without any just consideration of the baneful consequences. But then it is the object of the law to act upon, and suppress the offense through the offender. In its mandates, it is no respecter of persons, and looks not to the motives.
The only question is: "Was this a case of unlawful gaming? We think it very clear that it was. It was a risk of a bottle of wine upon a hazard, whether he knocked down the number of pins designated or not. It was not a bet with any particular individual, but with the whole company. So, the game was to go around from one to another; each was to treat if he failed to come up to the requisition of the assessors, as they were called. It would certainly be gaming, for two or more persons to determine, by the chance of a *291 game at ten pins, who should pay the boy for setting up the pins, or who should, treat, as much as if the same amount was staked up and won and lost upon the game. All these contrivances are regarded and intended as evasions of the law] and cannot be tolerated. The law is founded on a principle which must be sustained. It prohibits any game, or match of hazard and address, by which something can be obtained for nothing. Any attempt, by artifice, to evade the plain enactment, is regarded by the courts, as an aggravation of the offense. But it is said in this case, that the looser was not compelled to pay, but that it was to be voluntary. This can make no difference; it did not, in the least, change his condition; because, without such an agreement he was not bound to pay, as the law declares all gambling debts void, and not recoverable. The company also agreed, say the jury, that the transaction should not be regarded as gaming, and that the parties did not so consider it. Parties engaged in an unlawful practice cannot change its character by giving it a new name, or by any agreement of their own. The question still remains, how does the law regard it?
The judgment of the circuit court will be affirmed.