# WEAVER v. SMITH.

## (*Nashville.* March 7, 1899.)

1. JUDGMENT LIEN. *Strictly construed.*

    Judgment liens are the creatures of statute and strictly construed. They are lost if the statutory provisions are not strictly complied with. (*Post, p. 61.*)

    Cases cited and approved: Chapron *v.* Cassady, 3 Hum., 660; Bridges *v.* Cooper, 98 Tenn., 394.

2. SAME. *Lost when.*

    The judgment lien upon a debtor's equitable realty, created by registration of memorandum of judgment, to be followed by suit within sixty days thereafter, is lost unless the suit to enforce it is brought within thirty days after the return *nulla bona* of the original execution legally issued thereon. It will not suffice to bring such suit within thirty days after return of an alias execution *nulla bona*, if more than thirty days have elapsed after return of the original execution. (*Post, pp. 60–63.*)

    Code construed: §§ 4712, 4713, 4732–34 (S.); §§ 3698, 3699, 3718–20 (M. & V.); §§ 2984, 2985, 3002–3004 (T. & S.)

    Cases cited and approved: Riddle *v.* Motley, 1 Lea, 468.

3. SAME. *Execution properly issued. when.*

    The Court always indulges the presumption that an execution was legally and regularly issued, when nothing appears to the contrary. (*Post, p. 59.*)

    Cases cited and approved: Esselman *v.* Wells, 8 Hum., 487; Miller *v.* O'Bannon, 4 Lea, 401.

4. SAME. *Same.*

    An execution is legally and regularly issued, so as to require proceedings against the debtor's equitable realty to be commenced

within thirty days after its return *nulla bona,* where it was issued during the term at which the judgment was rendered but thirty days after its rendition. *(Post, pp. 63, 64.)*

Code construed: §§ 4732–34 (S.); §§ 3718–3720 (M. & V.); §§ 3002–3005*b* (T. & S.).

FROM   WILLIAMSON.

Appeal from Chancery Court of Williamson County. F. C. MAURY, Sp. Ch.

STOKES & STOKES and J. H. HENDERSON for Weaver.

VAUGHAN & ANDERSON and JAMES C. BRADFORD for Bank & Trust Co.

C. D. BERRY for Pritchett's Estate.

R. L. MORRIS for Masonic Widows and Orphans' Home.

WILKES, J. These cases, as to the facts and law deemed applicable, are fully set out in the opinion of the Court of Chancery appeals, as follows:

"The contest in this case is between judgment creditors of Baxter Smith as to which has the prior liens upon an equitable interest in a tract of land, to reach which the four separate bills, as stated in the caption, are filed.

"Baxter Smith was the owner of a tract of land in Williamson County, upon which he had placed several mortgages. The land was worth more than the mortgage debts upon it, and the several com-

plainants, who were judgment creditors, sought to reach his equitable interest in this land.

"There were three separate bills filed by ₁the complainant, Weaver, Clerk and Master, and₃one bill filed by the Union Bank & Trust Company. These bills were all filed to collect unsatisfied judgments against Baxter Smith.

"The first bill filed by Weaver was oṅ February 3, 1896, the second was on May 9, 1896, the third on June 18, 1896. The Union Bank & Trust☐Company's bill was filed May 7, 1896.

"A condensed and tabulated statement, showing accurately the dates of the filing of these bills, the dates of the judgments sought to be collected, the dates on which executions were issued, and the dates of their return, taken from the exhibit to the brief of counsel, and adopted as a part of our findings, is as follows:

" ' JUDGMENTS RECOVERED IN THIS CAUSE AND UPON WHICH BILLS WERE FILED.

" 'The dates and amounts of the judgments, the dates executions issued, when returned, and dates bills were filed, are as follows:

" 'JUDGMENTS OF WEAVER, CLERK AND MASTER.

*First Bill.*

| Date. | Amount. | Ex. Is. | Returned. |
|---|---|---|---|
| May 3, 1895 | $412 17 | July 23, 1895 | Aug. 2, 1895, *nulla bona.* |
| May 3, 1895 | 885 00 | July 23, 1895 | Sept. 27, 1895, *nulla bona.* |
| Oct. 25, 1895 | 117 80 | Dec. 26, 1895 | July 29, 1895, *nulla bona.* |

" ' Weaver filed his bill on these judgments February 3, 1896.

18 P—4

Weaver *v.* Smith.

### Second Bill.

| Date. | Amount. | Ex. Is. | Returned. |
|---|---|---|---|
| Jan. 10, 1896 | $696 07 | Feb. 25, 1896 | Feb. 29, 1896, *nulla bona.* |

" ' Registered in Williamson County March 10, 1896. Alias execution issued May 6, 1896; returned *nulla bona* May 8, 1896.

" ' Bill filed on this judgment May 9, 1896.

### Third Bill.

| Date. | Amount. | Ex. Is. | Returned. |
|---|---|---|---|
| Nov. 15, 1895 | $468 00 | Jan. 6, 1896 | Feb. 29, 1896, *nulla bona.* |
| Nov. 15, 1895 | 404 25 | Jan. 6, 1896 | Feb. 29, 1896, *nulla bona.* |
| Jan. 10, 1895 | 696 07 | Jan. 25, 1896 | Feb. 29, 1896, *nulla bona.* |
| Oct. 25, 1895 | 91 20 | Dec. 26, 1895 | Feb. 29, 1896, *nulla bona.* |

" ' Bill filed on these judgments June 18, 1896.

" ' Union Bank & Trust Company's judgments, October 28, 1895, $9,590.37; registered in Williamson County December 2, 1895; credited April 11, 1896.

" ' Bill filed to collect these judgments, May 7, 1896.' "

"A statement of facts agreed upon by the parties is also adopted as a part of our findings, and is as follows:

" 'In the above consolidated causes the following facts are agreed to:

" ' 1. That Baxter Smith is the owner of a tract of land located in the fourth civil district of Williamson County, Tennessee, and that the boundaries of said land are correctly set out in the various bills in these consolidated causes.

" ' 2. That Baxter Smith, on June 13, 1892, mortgaged said tract of land to C. D. Berry, as trustee, to secure certain notes owing to the estate of Sam. C. Pritchett, deceased, as follows: One note for $4,000, due September 13, 1893; one note for $163, due January 1, 1893, and one note for $186.67,

due September 13, 1893. That all of said notes are owing, past due, and that nothing has been paid upon them.

" ' 3. That defendant Baxter Smith, on October 12, 1895, mortgaged the said tract of land to defendant R. L. Morris, as trustee, subject, however, to the prior mortgage thereon to secure a note for $2,000, due at twelve months and payable to the Masonic Widows' and Orphans' Home. That said note is not yet due, but that nothing has been paid upon it.

" ' 4. That Thomas S. Weaver, in his character as Clerk and Master, recovered the following judgments against Baxter Smith in the Chancery Court of Davidson County, to wit:

" 'On May 3, 1895, judgment for $412.70; that execution issued on this judgment on July 23, 1895, and was returned on August 2, 1895, indorsed " No property of defendant to be found."

" ' May 3, 1895, judgment for $885, upon which execution issued on July 23, 1895, and the same was returned on September 29, 1895, indorsed " No property of defendant to be found."

" 'October 25, 1895, judgment for $117.80, upon which execution issued December 26, 1895, and was returned January 29, 1896, indorsed " No property of defendant to be found."

" ' That to collect these various judgments Thomas S. Weaver, in his character as Clerk and Master, filed his bill on February 3, 1896, and the same is of the above consolidated causes, under the style of

*Thomas S. Weaver, Clerk and Master,* v. *Baxter Smith and others.*

" ' 5. That Thomas S. Weaver, in his character as Clerk and Master, recovered, in addition to the foregoing, the following judgments against defendant, Baxter Smith, in the Chancery Court of Davidson County, Tennessee:

" ' On November 15, 1895, judgment for $468, upon which execution issued January 6, 1896, and was returned on February 29, 1896, indorsed "No property to be found."

" ' November 15, 1895, judgment for $404.25, upon which execution issued January 6, 1896, and was returned February 29, 1896, indorsed "No property of the defendant to be found."

" ' January 10, 1896, judgment for $696.07, upon which execution issued on February 25, 1896, indorsed "No property of defendant to be found."

" ' October 25, 1895, judgment for $91.20, upon which execution issued December 26, 1895, and was returned February 29, 1896, indorsed "No property of the defendant to be found."

" ' That to collect these various judgments Complainant Weaver filed his bill in this Court, on June 18, 1896, and the same in one' of the above consolidated causes, under the style of *Thomas Weaver, Clerk and Master,* v. *C. D. Berry and others.*

" ' 6. That, in addition to the foregoing judgments, complainant, Thomas S. Weaver, in his character as Clerk and Master, recovered the following judgments

against Baxter Smith in the Chancery Court of Davidson County:

"'January 10, 1896, judgment for $696.70, execution issued February 25, 1896, and returned February 29, "No property of defendant to be found."

"'That a duly certified memorandum of this judgment was, on March 10, 1896, registered in the Register's office of Williamson County, Tennessee, and that on May 6, 1896, an alias execution was issued on said judgment, and was returned on May 8, 1896, indorsed "No property of the defendant to be found."

"'That on May 9, 1896, complainant, Thomas S. Weaver, in his character as Clerk and Master, filed his bill in this Court, seeking to collect said judgment, and that the same is one of the above consolidated causes, under the style of Thomas S. Weaver, Clerk and Master, against Sam Pritchett and others.

"'That in all of the foregoing bills it was sought to subject the interest of Baxter Smith in the said property to the payment of the foregoing judgments, subject, however, to the two mortgages mentioned above, which were prior liens upon said land. Said bills are made a part of this agreed statement of facts for the purpose of showing the allegations and charges contained in them, under which they seek to reach the interest of Baxter Smith in said land.

"'7. That on October 28, 1895, one F. E. Williams, for the use of his wife, Mrs. R. E. Wil-

liams, recovered judgment in the Chancery Court of
Davidson County against Baxter Smith for $9,590.37;
that a duly certified copy of this judgment was reg-
istered in the Register's office of Williamson County,
on December 2, 1895, and the same is made an
exhibit to the bill of the Union Bank & Trust
Company against Baxter Smith and others; that said
judgment was a lien upon certain real estate in
Davidson County, which, by a decree of the Court,
was ordered sold to pay the same, and that said
land was sold on April 11, 1896, and after satisfy-
ing certain prior liens that were on said lands and
paying the costs of the case, there was realized
therefrom $7,316.74, which went to the credit of
the aforesaid judgment, leaving a balance owing
thereon and unpaid, as of April 11, 1896, the sum
of $2,273.63; that on April 24, 1896, said judg-
ment was transferred to the Union Bank & Trust
Company on the execution docket of the Chancery
Court in the following language: ''On consideration
of $2,273.63, balance due me on opposite judgment,
I hereby transfer and assign to the Union Bank &
Trust Company all right, title, and claim to said
balance on judgment, without recourse on me in law
or equity.   This April 24, 1896.   F. E. Williams,
for the use of R. E. Williams, my wife.''

" 'That, between April 11 and 24, 1896, said F.
E. Williams directed Thomas S. Weaver, Clerk and
Master, not to issue execution on said judgment
until he ordered it done, and accordingly no exe-

cution has ever been issued thereon; that the Union Bank & Trust Company filed its bill in the Chancery Court of Williamson County on May 7, 1896, to collect the aforesaid judgment, and the same is one of the above consolidated causes under the style of the Union Bank & Trust Company against Baxter Smith *et al.* The allegations and charges in said bill, upon which it is sought to reach the aforesaid land, are made parts of this agreed statement of facts for the purpose of showing the allegations and charges in them.

"'8. That the April Term, 1895, of the Chancery Court of Davidson County began April 2, 1895, and continued in session until July 24, 1895, when said Court adjourned to the Court in course. The October Term, 1895, began October 7, 1895, and continued in session until March 30, 1896, when the same adjourned to the Court in course.

"'It is further agreed that the judgment debtors, Baxter Smith and Hiram Vaughan, both had notice of the transfer and assignment of the judgment to the Union Bank & Trust Company in the case of *F. E. Williams, use, etc.,* v. *Baxter Smith et al.,* in the Davidson County Chancery Court, at the time of said transfer.'

"Upon these facts, the question is as to the priorities acquired under these several bills. It is admitted by counsel for Weaver that the bill filed by him on June 18, 1896, is last in right, and the present contest is therefore reduced to the bill filed

on May 7, 1896, by the Union Bank & Trust Company, and the other two bills filed by Weaver, one on February 3, 1896, and one on May 9, 1896.

"The Chancellor, held that the bill of the Union Bank & Trust Company was third in point of priority, or came after the bill of February 3, 1896, and the one of May 9, 1896. Whereas, it is insisted by appellant, the Union Bank & Trust Company, that the order of priority should be as follows: (1) The debts mentioned in the bill of Weaver of February 3, 1896, (2) the Union Bank & Trust Company, (3) to the debts named in the bill of May 9, 1896.

"It will be seen that the judgments in favor of the Union Bank & Trust Company were obtained October 28, 1895, but that no execution issued on these judgments, and the bill was filed May 7, 1896.

"Now, we understand it to be practically conceded that no lien was acquired, on account of failure to issue and have return of execution until the filing of this bill of May 7, 1896, and that therefore the filing of the first bill by Weaver, on February 3, 1896, took priority. But the insistence is that, inasmuch as the complainant, the Union Bank & Trust Company, filed its bill on May 7, 1896, it acquired priority to the bill of Weaver filed on May 9, 1896, and this is unquestionably true, unless Weaver had secured and perfected a lien by reason of his judgments, issuance of execution, and registration.

" It is to be noted that the judgment sought to be recovered in this bill was obtained on January 10, 1896, for $696.07; that an execution was issued on this judgment February 25, 1896, and returned February 29, 1896, *nulla bona*; that the judgment was registered in Williamson County, March 10, 1896, and that an alias execution was issued on May 6, 1896, and returned *nulla bona* May 8, 1896.

" It is to be noted that the bill in this case was not filed within sixty days after the issuance or return of the first execution, but was filed within two days after the issuance and one day after the return of the alias execution. Was the judgment lien lost by this proceeding?

" This, as we understand, is the principal question and matter of contest in this case. The insistence on behalf of Weaver is that, as the bill was filed within thirty days after the issuance of the alias execution, which was returned on May 8, 1896, the lien was preserved.

" It is said that the execution that is contemplated by the provisions of the statute is the mandatory execution, and that, inasmuch as the Court did not adjourn until March 30, 1896, no execution was required by law to be issued until after that adjournment, and that the Clerk was not compelled to issue an execution except within forty days after that adjournment.

" In our opinion the execution referred to in the

limitation imposed by the statute is the original execution whenever that may be issued. It is shown by the agreement that the term of the Chancery Court in which this judgment was obtained continued for more than four weeks. The provisions of the law in regard to the issuance of execution are substantially as follows:

"Section 4732 of the Code (Shannon) provides that the Clerks of the several Courts shall issue executions in · favor of the successful party, on all judgments rendered at any term, as soon after the judgment of the Court as practicable, and within the time prescribed by this Code.

"Section 4733: 'Clerks of the Supreme Courts shall issue executions within sixty days after the adjournment of each term.'

"Clerks of other courts of record within forty days after adjournment. And it is provided in this section (4734) that when the Court shall continue in session for more than four weeks, the Clerk may issue execution in any case at any time after thirty days after judgment therein.

"The first execution issued in this case, as shown by agreement of the parties, was issued February 25, 1896, whereas the judgment was obtained January 10, 1896—that is, more than thirty days after the judgment was obtained. · This execution, therefore, was legally issued, although the Clerk was not compelled to issue the same unless affidavit had been made as provided by § 4737 of the Code

(Shannon). And in any event, it has been decided that the presumption always is, when nothing to the contrary appears, that an execution was legally and regularly issued. See 8 Hum., 487; 4 Lea, 401.

"But we think there can be no question, and, in fact, it is not suggested, that the first execution was not regularly and legally issued. In our opinion it makes no difference that the Clerk was not compelled to issue this execution, unless affidavit was made as provided by law. Whether an affidavit was made and he was compelled to issue the execution, or whether he issued it at the request of the parties because it was lawful for him to do so, we are not informed. The point is that it was legally and regularly issued. As under the provisions of the law, the Court having continued in session for more than four weeks, it was lawful for him to issue the execution after the expiration of thirty days from the rendition of the judgment, without any cause shown therefor. So, it seems to be settled, beyond controversy, that the execution issued on February 26, 1896, was legally and regularly issued, and was the first execution issued, and it was returned *nulla bona* on February 29, 1896, and the bill was not filed within thirty days thereafter. In our opinion, by the express terms of the statute, complainant in this case lost his lien.

"Sections 4712 and 4713, Shannon's Code, are taken from Sec. 3, Ch. 11, of the Act of 1832. This section provides that a judgment or execution at

law shall not bind equitable interests in real estate
or · other property, or legal or equitable interests in
stock or choses in action, unless a memorandum of
said judgment, stating the amount and date thereof,
with the names of the parties, be registered in the
Register's office of the county where the real estate
is situated, in cases where real estate is to be sub-
jected, and in all other cases in the county where
the debtor resides, within sixty days from the time
of the rendition of the judgment, and the lien shall
cease unless the bill in equity to enforce said lien
is filed within thirty days from the time of the
return of the execution unsatisfied.

. "Now, we think the purpose of the Legislature is
clearly apparent, and it is to enforce and require
prompt action on the part of a party seeking to
assert a lien either on equitable interests in realty
by reason of the judgment, or an execution lien on
personalty, and to require him, within thirty days
after he ascertained, by a proper return of an offi-
cer on an execution legally issued, that there is no
property subject to execution at law, to file his bill.
So, in our opinion, it does not avail the complain-
ant, Weaver, that he might have waited for thirty-
nine days after the adjournment of the Court before
he had execution issued, and could then have had
execution issued and returned and filed his bill within
thirty days thereafter, and thus prolong the time of .
his lien. But having elected, as he did, to have
an execution issued before the adjournment of the

Court, and after the expiration of thirty days from
the judgment, and it having been ascertained, in the
mode prescribed by law by the return of the offi-
cer on execution, that there was no legal estate
subject to execution by the express terms of the
statute, he lost his lien unless he filed his bill
within thirty days from this return establishing this
fact.

"The lien given in these cases is a statutory lien,
which has always been strictly construed, and is lost
if the provisions of the statute are not complied
with. *Chapron* v. *Cassaday*, 3 Hum.; 660; *Bridges*
v. *Cooper*, 14 Pickle, 394, and cases there cited.

"Let us suppose that in this case the Court had
adjourned on January 10, the day on which the
judgment in this case was rendered. Then, under
the theory of counsel for complainant, Weaver, at
all events, the execution within the purview of the
statute, which they say was the mandatory execu-
tion, would necessarily have had to have been issued
on February 20. Suppose it had been so issued,
and the officer, as he legally might have done, had
at once returned the execution *nulla bona*, making
his return say on February 21. Then certainly com-
plainant's lien would have been lost if his bill had
not been filed within thirty days thereafter, or on
March 21. Whereas, as a matter of fact, in this
case it was not filed until May 9. So, we think
it clearly apparent that there is no merit in the
contention of the counsel for the complainant that

the execution contemplated by the limitation of the statute is the mandatory execution.

"We concur with counsel to the extent that the complainant, claiming such a lien, could not wait, say for ten or eleven months, and prevent the issuance of an execution and thus extend his lien. As said in the case of *Stahlman* v. *Watson*, 39 S. W. Rep., 1060, "The execution contemplated is one which shall be issued as soon as the creditor may legally cause the issuance." See, also, to the same effect, the opinion by Judge Cooper in *Ridley* v. *Motley*, 1 Lea, 468.

"We are, therefore, of the opinion that, where an execution is held up and not issued beyond the time in which the Clerk is required by law to issue it, and certainly when thirty days thereafter have expired, the lien would be lost. But we are further of the opinion, in the words of Judge Cooper, just cited, that it is the execution which may be first legally issued, and which is legally issued, the original execution.

"We think that by the express terms of the statute, when an execution is thus legally issued and returned, the bill must be filed within thirty days thereafter, or the lien of the judgment is lost. This is as much a matter of necessity as it is for him to register a memorandum of his judgment within thirty days after its rendition. They are separate provisions, but both absolutely necessary.

And, as said above, this statute must be strictly complied with or the lien is lost.

"We are therefore of the opinion that, in this case, the complainant having waited for more than thirty days after the return of the execution issued on the twenty-sixth and returned on the twenty-ninth of February, his lien was lost. And while he acquired a lien by the filing of his bill, it only dated from that time, viz., the ninth of May, when, as is conceded, the complainant Union Bank & Trust Company had obtained a lien by the filing of its bill on May 7.

"For the same reasons here given the complainant Union Bank & Trust Company had lost its lien by reason of its judgment and registration, and only acquired a lien on May 7 by the filing of its bill.

"It results in our opinion that the Chancellor was in error in fixing the order of priorities, and that they should be as follows: First in right, the bill of complainant filed February 3, 1896; second, the bill of the Union Bank & Trust Company filed May 7, 1896; third, the bill filed by Weaver May 9, 1896; fourth, the bill filed by Weaver June 18, 1896, and a decree will accordingly be so entered. The cost of the appeal will be paid by the complainant Weaver, the cost below as adjudged by the Chancellor in the several cases. All concur."

Before this Court a very able and earnest argument is made that the construction thus given

to the Act and the rule thus laid down by the Court of Chancery Appeals will have the effect to curtail the sixty days' lien given by the statute upon the registration of the judgment if an execution is issued and returned within thirty days after the judgment is rendered, and this contention is undoubtedly correct.

The Code does not say in express terms that the right to register and acquire a lien for sixty days shall be forfeited by the issuance and return of an execution within the thirty days after judgment and before the lien would expire.

It is plausibly said that the creditor ought to have both rights—that is, to immediately issue his execution when occasion justifies and afterwards register his judgment and have its lien preserved for the full sixty days, and that the sixty days is given the creditor to see if he can make the debt by execution. The reasoning is that the statute gives sixty days in any event as a result of registration, whereas, by this ruling, this right is destroyed if execution is taken out and returned before the judgment is registered, and the limit of time must then date from the return of the execution. We are of opinion the Court of Chancery Appeals is correct, and, construing the statute as a whole, it is intended to limit the time when the bill may be filed to the thirty days after the return of the original execution whether it is issued in the time prescribed by statute or previously, and whether before or af-

Weaver *v.* Smith.

ter the registration. We feel that we can add nothing to the very able and lucid opinion of the Court of Chancery Appeals, and we adopt it as the opinion of the Court, with this addition: The costs of the Court below have not been adjudged and the costs of the appeal have been adjudged against Weaver. We direct that the costs of both Courts be equally divided, and to that extent the decree of the Court of Chancery Appeals is modified; in all other things affirmed.