**In re David Wendell CLARK and Tanya Renee Clark, a.k.a./d.b.a. Tanya Renee Chambers, Debtors.**

**Mary C. WALKER, Trustee, Plaintiff,**

v.

**FORD MOTOR CREDIT COMPANY, Defendant.**

**Bankruptcy No. 3–89–00960.**
**Adv. No. 3–89–0115.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 21, 1990.

Mary C. Walker, Knoxville, Tenn., for plaintiff/trustee.

Steven D. Lipsey, Knoxville, Tenn., for Ford Motor Credit.

Perry P. Paine Jr., Maryville, Tenn., for T & T Enterprises.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This case is before the court upon the trustee's complaint to avoid an alleged preferential transfer of a security interest in a 1987 Dodge Charger. The defendant disputes the trustee's contention that the transfer was preferential. Having considered the evidence introduced at the trial of this matter and having considered the arguments of the parties, the court now submits its findings of fact and conclusions of law pursuant to Bankr.R. 7052. This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(F) (West Supp.1989).

### I.

On February 4, 1989, the debtors, David Clark and his wife Tanya Renee Clark, traded in their 1980 Ford Escort and purchased a 1987 Dodge Charger from Gary Yeomans Ford (Gary Yeomans). The debtors executed a "Tennessee Vehicle Retail Instalment Contract" and granted Gary Yeomans a security interest in the Dodge to secure payments under the installment contract. The contract and the security agreement were later assigned by Gary Yeomans to Ford Motor Credit Company (Ford Motor).

On February 8, 1989, Gary Yeomans sent paperwork to the Blount County clerk's office to have the debtors' Dodge titled and registered. The Blount County clerk's office received the paperwork on February 9, 1989. The paperwork indicated the debtors wished to transfer the license plate from their trade-in vehicle to the Dodge. When the clerk's office began processing the application, the clerk discovered a problem

with the license plate transfer because the name on the trade-in vehicle registration (Renee Clark) was different than the name appearing on the paperwork submitted by Gary Yeomans (Tanya R. Clark). At that point, the clerk's office ceased processing the application for certificate of title and registration on the debtors' vehicle.

On February 14, 1989, the clerk's office notified Gary Yeomans' office by telephone that the paperwork for various title applications could be picked up, including the paperwork on the debtors' Dodge. A note was made on the debtors' paperwork that before processing could be completed on the application, an affidavit, known as a "one in the same" form would have to be executed by the debtor.[1] Gary Yeomans retrieved the paperwork submitted on the debtors' vehicle from the clerk's office on February 17, 1989. As a result, the Blount County clerk's office did not process or submit a completed application for certificate of title and registration on the debtors' vehicle.

On or shortly after February 24, 1989, Gary Yeomans submitted similar paperwork on the debtors' new vehicle to the Knox County clerk. This paperwork did include a "one in the same" form. The Knox County clerk's office processed and submitted a completed application for certificate of title and registration to the Tennessee Motor Vehicle Division. The application was dated February 28, 1989. A certificate of title was issued for the debtors' vehicle on April 4, 1989. It noted February 4, 1989, as the date of the security interest.

On April 6, 1989, the debtors filed their petition for relief under chapter 7 of the Bankruptcy Code. On the same date, the plaintiff was appointed chapter 7 trustee in the debtors' bankruptcy case. Subsequently, the plaintiff filed this action to avoid the lien held by Ford Motor on the debtors' vehicle, arguing the transfer of the security interest was preferential and avoidable under 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989).

## II.

A transfer of a debtor's interest in property is preferential and avoidable by the trustee if the transfer was made within ninety days of the filing date of the bankruptcy petition and was for the benefit of a creditor on account of an antecedent debt owed by a debtor before such transfer was made and while the debtor was insolvent and which enabled the creditor to receive more than it would receive if the case were in chapter 7 of title 11, the transfer had not been made, and the creditor received payment of its debt to the extent provided by the provisions of title 11. 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989). In this case, the transfer is the security interest granted to Gary Yeomans within ninety days of the debtors' bankruptcy petition. Because of the presumption of insolvency afforded by § 547(f) of the Code, the debtors were insolvent both at the time of the transfer and on the bankruptcy petition date.[2] The insolvency of the debtors on the petition date results in the conclusion that the prepetition transfer of the security interest enabled the creditor to receive more than it would have received if the transfer had not been made and the creditor received payment pursuant to the distribution scheme under chapter 7. *See Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416 (9th Cir. 1985). The disputed issue in this case is whether there was a transfer on account of an antecedent debt. If there was, all of the elements of § 547(b) are satisfied and the trustee would be entitled to avoid the transfer. If not, the trustee loses.

---

1. A "one in the same" form is simply an affidavit used to show that name changes or variations in the same person's name actually refer to one person.

2. Section 547(f) of the Code reads:

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.
11 U.S.C.A. § 547(f) (West 1979).

■ The debtors granted a security interest in their new automobile at the time they bought the car on February 4, 1989. Without more, one might conclude the transfer of the security interest was for a contemporaneous debt and not an antecedent debt. Section 547(e)(2), however, changes the ordinary meaning of the word "transfer." It provides in relevant part:

(2) For the purposes of this section ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days.

11 U.S.C.A. § 547(e)(2) (West 1979).

Hence, under § 547(e)(2)(B), if perfection of the security interest in the vehicle took place more than ten days after the granting of the security interest, the transfer is deemed to have occurred at the time of perfection and not at the time the security interest was granted. In the instant case, if the perfection of the defendant's security interest occurred more than ten days from February 4, 1989, the date the debtors incurred the debt on the vehicle and granted the security interest, the date of the transfer of the security interest would be deemed to be the date of perfection and the transfer would have been for an antecedent debt. Consequently, the court must determine the date the security interest in the automobile was perfected.

■ Under Tennessee law, perfection of a security interest in a motor vehicle is accomplished by notation of the lien on the vehicle's certificate of title in accordance with Tennessee certificate of title laws. Tenn.Code Ann. § 47–9–302(3)(b) (Supp. 1988); *id.* §§ 55–3–125 to 55–3–26 (1988); *Apex Oil Co. v. Tims (In re Armstrong),* 56 B.R. 781, 786 (W.D.Tenn.1986); *In re Wallace,* 251 F.Supp. 581 (E.D.Tenn.1966); *In re Crosson,* 226 F.Supp. 944 (E.D.Tenn.

1963).[3] Specifically, Tenn.Code Ann. § 55–3–125 and § 55–3–126(a) address the requirements for perfecting liens on motor vehicles:

No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession entered into after March 1, 1951, or a lien of the state for taxes established pursuant to title 67, chapter 1, part 14, shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers, until the requirements of this section and § 55–3–126 have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien.

Tenn.Code Ann. § 55–3–125 (1988).

(a) Such filing and the notation of the lien or encumbrance upon the certificate of title as provided in chapters 1–6 of this title shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrancers, except such liens as may be authorized by law dependent upon possession. Constructive notice shall date from the time of first receipt and filing of the request for the notation of the lien or encumbrance upon the certificate of title by either the division or the county clerk acting as agent for the division, as shown by its endorsements thereon.

Tenn.Code Ann. § 55–3–126(a) (1988).

Gary Yeomans submitted two separate requests for the notation of a lien upon the title to debtors' automobile. The first request submitted on February 9, 1989, to the Blount County clerk's office was not processed and did not result in the notation of a lien on the certificate of title. The second request submitted on or shortly after February 24, 1989, to the Knox County clerk's office was processed and did result

---

**3.** This method of perfection applies to all security interests in motor vehicles except security interests in vehicles classified as inventory or security interests whose existence depends exclusively upon possession, i.e., an artisan's lien. *Waldschmidt v. Associates Commercial Corp. (In re Groves),* 64 B.R. 329, 330 n. 3 (Bankr.M.D. Tenn.1986).

in the issuance of the certificate of title on April 4, 1989, noting the lien. The second application was dated February 28, 1989. The question presented is whether constructive notice provided for by Tenn.Code Ann. § 55–3–126 dates from the time of the first request for notation of lien made to the Blount County clerk's office or from the time of the second request for notation of lien made to the Knox County clerk's office.

Ford Motor argues the Blount County clerk's office was provided all the information necessary to obtain a certificate of title. Rather than process the application for title, however, the clerk's office sent the paperwork back to Gary Yeomans because it lacked sufficient information to obtain proper license registration of the vehicle through a transfer of tags from the trade-in vehicle to the new vehicle.

Regardless of whether the Blount County clerk's office should have processed the application for title, it did not. The application which led to the issuance of a certificate of title in this case was a wholly separate application submitted to and processed by the Knox County clerk's office.

■ Tennessee law requires both filing and notation of a lien on an automobile title for perfection of a security interest. *Waldschmidt v. Smith (In re York),* 43 B.R. 36 (Bankr.M.D.Tenn.1984). If the filing does not lead to the notation of the lien on the title, perfection does not occur. Even when a properly-submitted application is lost by state officials and the applicant is blameless, perfection will not take place in the absence of a notation of the lien on the title. *Id.*

In *Weill v. United Bank (In re Poteet),* 5 B.R. 631 (Bankr.E.D.Tenn.1980), the court had to decide whether constructive notice of a lien on a transfer related back to the date of a first application for title which was rejected because it was not accompanied by a notarized bill of sale and pencil tracing of the trailer's vehicle identification number, or to the date of a second application that was processed and resulted in the issuance of the title. The court held constructive notice of the lien related back to the second application and not the first.

■ In this case, the application of Gary Yeomans for title and registration filed with the Blount County clerk was insufficient as originally submitted. The document required by the clerk's office to complete the processing of the application was never submitted by Gary Yeomans. The Blount County clerk's office never submitted a completed application for title to the Tennessee Motor Vehicle Division.

A second application for title and registration was submitted in proper form to the Knox County clerk's office. From this application, a Tennessee certificate of title was issued which properly noted Ford Motor's security interest in the debtors' vehicle. Consistent with *In re Poteet,* this court determines that the security interest held by Ford Motor was not perfected until the application for certificate of title was submitted by Gary Yeomans to the Knox County clerk's office. Since the date of the Knox County application was February 28, 1989, Ford Motor's security interest was perfected more than ten days after it was granted. *See* 11 U.S.C.A. § 547(e)(2)(B) (West 1979). Therefore, the security interest was received on account of an antecedent debt under § 547(b). *Id.* § 547(b)(2).

■ Notwithstanding the above analysis, Ford Motor seeks to retain its security interest through the use of this court's equitable powers. Again, Ford Motor points out the problem with processing the debtors' application arose from the transfer of license plates and not from the information necessary to title the vehicle.

The court is not persuaded by Ford Motor's argument. The principle purpose of having liens noted on certificates of title is to provide third parties with notice that others claim an interest in the debtors' property. Aside from the fact that no title ever issued from the Blount County application, Ford Motor has not shown that third parties inquiring as to liens on the debtors' automobile would have discovered Ford Motor's security interest from the original application for title. *See In re Poteet,* 5 B.R. at 635. As noted above,

Tennessee law is clear that the filing of an application for a certificate of title alone is not sufficient to perfect a security interest. *See Waldschmidt v. Smith (In re York),* 43 B.R. 36 (Bankr.M.D.Tenn.1984); *Coble Systems v. Coors of the Cumberland (In re Coors of the Cumberland),* 19 B.R. 313, 320 (Bankr.M.D.Tenn.1982). Thus, the act by Gary Yeomans of submitting information to the Blount County clerk's office to obtain a certificate of title was legally insufficient to perfect Ford Motor's security interest.

Upon this court's finding that Ford Motor received a security interest in the debtors' automobile on account of an antecedent debt, and there being no dispute as to the other elements of a preferential transfer being present in this case, the court determines that the security interest held by Ford Motor in the debtors' automobile was a preferential transfer as defined by 11 U.S.C.A. § 547(b). Accordingly, a judgment will enter in favor of the plaintiff.