**KEEP FRESH FILTERS, INC. d/b/a Diversified Financial Planners, Inc., Plaintiff/Appellee,**

v.

**Connie REGULI and Iona Senecal, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Sept. 2, 1994.

438

James David Nave, Baker, Worthington, Crossley, Stansberry & Woolf, Nashville, for plaintiff/appellee.

H. Tom Kittrell, Jr., Nashville, for defendants/appellants.

## OPINION

KOCH, Judge.

This appeal involves a dispute between a judgment creditor and its judgment debtor and her daughter concerning the priority of their respective rights to the judgment debtor's automobile. After the sheriff's office unilaterally returned the automobile to the judgment debtor and her daughter, the judgment creditor filed suit in the Chancery Court for Davidson County against the judgment debtor and her daughter, seeking a declaratory judgment that its execution lien was superior to a security interest claimed by the judgment debtor's daughter. The trial court granted a partial summary judgment for the judgment creditor and also certified the judgment as final in accordance with Tenn.R.Civ.P. 54.02. The judgment debtor and her daughter have perfected this appeal. We have determined that the daughter's rights were subordinate to those of the judgment creditor and, therefore, affirm the judgment.

## I.

Connie L. Reguli purchased a 1986 BMW on April 7, 1990 using money she had borrowed from her daughter, Iona Senecal.[1] On June 11, 1990, the Davidson County Clerk, acting on Ms. Reguli's behalf, submitted an application for certificate of title and registration to the Motor Vehicle Division of the Tennessee Department of Revenue. The application did not identify any lien holders and certified there were no liens on the automobile other than those listed on the application. On July 20, 1990, the Motor Vehicle Division issued a certificate of title showing Ms. Reguli as the automobile's owner and indicating that there were no outstanding liens.

On January 9, 1991, Keep Fresh Filters, Inc. ("Keep Fresh Filters") filed suit against Ms. Reguli to enforce a note. Ms. Reguli received service of a copy of the summons and complaint on January 12, 1991. On January 29, 1991, Ms. Reguli and Ms. Senecal requested the Motor Vehicle Division to issue a new certificate of title showing that Ms. Senecal had a lien on the automobile. The Motor Vehicle Division notified Ms. Senecal on February 7, 1991 that it had disapproved the application "due to improper documentation" and that it would not process the application "until [its] objections are removed."

Keep Fresh Filters obtained a default judgment against Ms. Reguli for $12,460.39 plus post-judgment interest on March 15, 1991. The trial court filed its judgment on March 27, 1991, and Keep Fresh Filters recorded a copy of the judgment in the register's office on May 7, 1991. The clerk and master issued a writ of execution on May 8, 1991, directing the Davidson County Sheriff to take possession of Ms. Reguli's automobile. On May 15, 1991, the sheriff's office took possession of the automobile and issued a notice of a sheriff's sale to be held on June 6, 1991.

On May 28, 1991, approximately two weeks after the sheriff took possession of the automobile, Ms. Reguli and Ms. Senecal took copies of Ms. Senecal's cancelled check and the document certifying the existence of Ms. Reguli's promissory note to the Motor Vehicle Division. The Motor Vehicle Division issued a new certificate of title on May 28, 1991, showing Ms. Senecal as the first lienholder and January 29, 1991 as the date of her security interest.

Ms. Reguli and Ms. Senecal immediately took the new certificate of title to the sheriff's department. Notwithstanding the valid levy of execution, the sheriff's department returned the automobile to Ms. Reguli and

---

1. On April 6, 1990, Ms. Senecal wrote Ms. Reguli a check for $6,000 bearing the notation "1986 BMW–Black/WBAAE640560986067/Due in 3 years at 10%." On the same date, Ms. Senecal and Ms. Reguli also executed a document "certif[ying] the existence of a promissory note" and stating that the "Date of Issuance of Loan" was April 6, 1990.

cancelled the sheriff's sale without consulting Keep Fresh Filters or the trial court. Keep Fresh Filters did not discover what the sheriff's department had done until Ms. Reguli had already obtained the automobile.

Keep Fresh Filters filed suit against Ms. Reguli and Ms. Senecal on August 28, 1991 requesting (1) a declaration that its lien was superior to Ms. Senecal's security interest, (2) a declaration that Ms. Senecal's security interest was a fraudulent transfer, and (3) a request that the trial court subject the automobile to the judgment pursuant to Tenn. Code Ann. § 16–11–104 (1994). Both parties sought partial summary judgments on the priority issue. On October 14, 1992, the trial court entered an order granting Keep Fresh Filters' motion and declaring that its execution lien was superior to Ms. Senecal's security interest. Ms. Reguli and Ms. Senecal perfected this appeal after the trial court certified its order as final in accordance with Tenn.R.Civ.P. 54.02.

## II.

■ Three bodies of law govern the respective rights that Keep Fresh Filters and Ms. Senecal have in Ms. Reguli's automobile. They include Article Nine of the Uniform Commercial Code, the statutes governing motor vehicle certificates of title, and the statutes governing judgment liens and executions. Construed together, these statutes provide the principles for fixing the priorities among competing lien claimants and secured parties.

### A.

■ Except for the transactions identified in Tenn.Code Ann. § 47–9–104 (1992), Article Nine of the Uniform Commercial Code applies to all consensual transactions intended to create a security interest in goods by contract. Tenn.Code Ann. § 47–9–102(1)(a), –102(2) (1992). Motor vehicles are goods for the purpose of Article Nine, and therefore, the Uniform Commercial Code applies to transactions intended to create a security interest in automobiles. Tenn.Code Ann. § 47–9–105(1)(h) (1992); *Manufacturers Acceptance Corp. v. Gibson,* 220 Tenn. 654, 657, 422 S.W.2d 435, 436 (1967).

■ Article Nine is not, however, the only body of law governing security interests in automobiles. In accordance with Tenn.Code Ann. § 47–9–302(3)(b) (1992), Article Nine's filing requirements must give way to any statutory scheme that provides for the central filing of security interests or the notation of these interests on a certificate of title. Tennessee's motor vehicle title and registration laws are just such statutes. Thus, compliance with these statutes is the exclusive method for perfecting a security interest in automobiles not part of inventory. Tenn. Code Ann. § 55–3–126(b) (1993); *Personal Loan & Fin. Corp. v. Guardian Discount Co.,* 206 Tenn. 221, 226, 332 S.W.2d 504, 506 (1960); *Bank of Commerce v. Waddell,* 731 S.W.2d 61, 62 (Tenn.Ct.App.1986); *Star Chrysler–Plymouth, Inc. v. Phillips,* Davidson Equity, slip op. at 11–12, 5 T.A.M. 48–8, [1973–1980 Transfer Binder] Secured Transactions Guide (CCH) ¶ 53,486 (Tenn.Ct.App. Oct. 29, 1980); *see also Coble Sys., Inc. v. Coors of the Cumberland, Inc. (In re Coors of the Cumberland, Inc.),* 19 B.R. 313, 320 (Bankr.M.D.Tenn.1982).

■ Even though the motor vehicle title and registration statutes control the filing requirements for perfecting security interests in automobiles, the Uniform Commercial Code still provides the rules for determining priorities among persons claiming an interest in the same automobile. Secured parties, even unperfected secured parties, have greater rights in collateral than any other creditor unless Article Nine provides otherwise. Tenn.Code Ann. § 47–9–201 (1992); 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 26–2 (3d ed. 1988). While Tenn.Code Ann. § 47–9–312 (1992) governs the priorities among competing security interests in the same collateral, Tenn. Code Ann. § 47–9–301 (1992) governs the priorities among unperfected security interests and other types of claims.

Tenn.Code Ann. § 47–9–301(1)(b) specifically provides that an unperfected security interest is subordinate to the rights of "a person who becomes a lien creditor before the security interest is perfected." This provision controls the outcome of this appeal.

Thus, sorting out the competing claims of Keep Fresh Filters, Ms. Reguli, and Ms. Senecal requires the consideration of four questions: (1) Is Keep Fresh Filters a lien creditor? (2) If Keep Fresh Filters is a lien creditor, when did it become a lien creditor? (3) Was Ms. Senecal's security interest unperfected when Keep Fresh Filters became a lien creditor? and (4) What effect, if any, did Ms. Senecal's later perfection of her security interest have on the priority of her claim?

### B.

#### KEEP FRESH FILTERS AS A LIEN CREDITOR

 A "lien creditor" according to Tenn. Code Ann. § 47–9–301(3), is a "creditor who has acquired a lien on the property involved by attachment, levy or the like." Determining whether a particular creditor is a lien creditor requires consideration of state law distinct from the Uniform Commercial Code. 9 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 9–301:30 (3d ed. 1985); 8 William D. Hawkland, et al., *Uniform Commercial Code Series, Article 9: Secured Transactions* § 9–301:04, at 590 (1986). We must first determine whether the claimant is a creditor under Tenn.Code Ann. § 47–1–201(12) (Supp.1994). Then we must determine whether the claimant has a lien recognized by state law and whether the lien attaches to property subject to a conflicting claim. Finally, we must determine whether the lien arises from an "attachment, levy or the like."

 The record leaves little room for doubt that Keep Fresh Filters is Ms. Reguli's creditor and that both Keep Fresh Filters and Ms. Senecal are asserting conflicting claims regarding the same property. Keep Fresh Filters is Ms. Reguli's judgment creditor by virtue of its valid $12,460 judgment against her,[2] and both parties are claiming an interest in Ms. Reguli's automobile. The remaining two issues concerning whether Keep Fresh Filters has a lien on the automobile and, if it does, whether Keep Fresh

Filters obtained the lien by "attachment, levy or the like" are not as straightforward.

 A lien, in its broadest sense, is a legal claim or charge on real or personal property used as security for the payment of some debt or obligation. *Shipley v. Metropolitan Life Ins. Co.*, 25 Tenn.App. 452, 454, 158 S.W.2d 739, 741 (1941). Persons who obtain a judgment become judgment creditors and may obtain two significantly different liens against the judgment debtor's property. The first is the judgment lien authorized by Tenn.Code Ann. § 25–5–101(b) (Supp.1994) that attaches to a judgment debtor's real property. The second is the execution lien authorized by Tenn.Code Ann. § 25–5–103 (1980) that attaches to the judgment debtor's personal property. This lien requires the registration of the judgment within sixty days after it is rendered and issuance and levy of a writ of execution.

 A writ of execution is now the customary vehicle for enforcing money judgments. Tenn.Code Ann. § 26–1–103 (1980); Henry R. Gibson, *Gibson's Suits in Chancery* § 307 (William H. Inman ed., 7th ed. 1988); Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 29–1 (3d ed. 1991). It is simply an order directing the sheriff to levy upon and sell the judgment debtor's property identified in the writ that is not statutorily exempt. Tenn.Code Ann. § 26–1–104 (1980). Clerks of the courts of record must issue writs of execution thirty days after the entry of a judgment as a matter of course or sooner if requested by the judgment creditor. Tenn.Code Ann. §§ 26–1–201, –203, –206, –207 (1980 & Supp.1994); Tenn.R.Civ.P. 62.01.

 A levy of execution is the officer's act of appropriating or singling-out the debtor's property for the satisfaction of a debt. *McMillan v. Gaylor*, 35 S.W. 453, 454–55 (Tenn.Ch.App.1895). It is accomplished by the officer's asserting dominion over the property by actually taking possession of it or doing something that amounts to the same thing. *Nighbert v. Hornsby*, 100 Tenn. 82,

---

**2.** The record contains no indication that Ms. Reguli has sought to set aside or otherwise challenge the default judgment.

86, 42 S.W. 1060, 1061 (1897); *Evans v. Higdon*, 60 Tenn. 245, 247 (1872); *Bradley & Dortch v. Kesee*, 45 Tenn. (5 Cold.) 223, 227 (1867). A levy on personal property results in the actual divestiture of the judgment debtor's title. *Brown v. Allen*, 40 Tenn. (3 Head) 429, 430 (1859); *Miller's Lessee v. Estill*, 16 Tenn. (8 Yer.) 452, 460 (1835). It places the debtor's personal property in the custody of the law, and the sheriff acquires a special interest in the property. *Malone v. Abbott*, 22 Tenn. (3 Hum.) 532, 533 (1842).

 A judgment creditor's execution lien is thus inextricably linked to the sheriff's levy of execution. Since judgment creditors such as Keep Fresh Filters have acquired their liens by execution and levy, they are lien creditors for the purpose of Tenn.Code Ann. § 47–9–301(3).

 The existence and efficacy of an execution lien depends only upon strict compliance with the statutes governing execution liens and writs of execution. *Weaver v. Smith*, 102 Tenn. 47, 61, 50 S.W. 771, 774 (1899). As long as these statutory requirements are observed, persons claiming an execution lien need not comply with Article Nine's filing requirements because execution liens are not consensual security interests created by contract. Tenn.Code Ann. §§ 47–9–102(2) –102 cmt. Likewise, they need not comply with the motor vehicle title and registration statutes since execution liens depend on possession. Tenn.Code Ann. §§ 55–3–125, –126(b).

### WHEN DID KEEP FRESH FILTERS' LIEN ARISE?

 The rights of a lien creditor hinge upon identifying the precise point when its lien arises. No uniform rules exist concerning this question, and one legal scholar has identified four possible theories for determining when a lien arises. Thomas M. Ward, *Ordering of the Post–Judgment Judicial Process Lien and the Security Interest Under Article Nine: Meshing Two Different*

*Worlds*, 1A Bender's U.C.C.Serv. (MB) § 7E.04[1] (1981 & Supp.1991). Tennessee aligns itself with the jurisdictions following the early common-law rule that an execution lien relates to the teste of the execution.

 The purpose of an execution lien is to facilitate using the judgment debtor's property to satisfy its debt to the judgment creditor. *Overton v. Perkins*, 8 Tenn. (Mart. & Yer.) 367, 374 (1828). To carry out this purpose, the "doctrine of relation" provides that the execution lien of a court of record relates to its teste. 12 Tennessee Jurisprudence *Executions* § 15, at 105–06 (1984). A properly issued execution gives rise to a lien on the defendant's leviable property from the day it is issued. Tenn.Code Ann. § 26–1–109 (Supp.1994) (executions are tested the day of issuance); *Carmack v. Nichols*, 181 Tenn. 551, 560, 181 S.W.2d 977, 980 (1944); *John Weis, Inc. v. Reed*, 22 Tenn.App. 90, 100, 118 S.W.2d 677, 683 (1938); *Stahlman v. Watson*, 39 S.W. 1055, 1059 (Tenn.Ch.App.1897).[3]

 The doctrine of relation gives the sheriff time to carry out the court's orders, Lonnie C. Rich, Note, *Enforcing Money Judgments in Tennessee*, 4 Mem.St.U.L.Rev. 65, 70 n. 48 (1973), and prevents the debtor from disposing of its property after the judgment. *Edwards v. Thompson*, 85 Tenn. 720, 722, 4 S.W. 913, 913 (1887). The Uniform Commercial Code did not explicitly displace the prior decisions recognizing the doctrine of relation, and, therefore, the doctrine continues undisturbed. Tenn.Code Ann. § 47–1–103 (1992). Tenn.Code Ann. §§ 47–9–301(1)(b), –301(3) were not intended to define when a lien arises. We find no inconsistency between Tenn.Code Ann. § 47–9–301(3) and the doctrine of relation, and accordingly, we respectfully disagree with Judge Bare's dictum that an execution lien arises only after the levy has actually been made. *In re Orr*, 28 U.C.C.Rep.Serv. (Callaghan) 227, 231, 1978 WL 23492 (Bankr.E.D.Tenn.1978).

---

**3.** The same rule does not apply to executions issued by general sessions courts or to writs of attachment. An execution issued by general sessions court does not give rise to a lien until the sheriff actually levies on the property. *Hammock v. Qualls*, 139 Tenn. 388, 391–92, 201 S.W. 517, 518 (1918). Likewise, an attachment lien does not arise until the sheriff levies on the property. *Sharp v. Hunter*, 47 Tenn. (7 Cold.) 389, 394 (1870).

The clerk and master issued the writ of execution directing the sheriff to levy on Ms. Reguli's automobile on May 8, 1991. In accordance with Tenn.Code Ann. § 26–1–109, the writ's teste date was May 8, 1991. Therefore, Keep Fresh Filters' execution lien on Ms. Reguli's automobile arose on May 8, 1991.

### Was Ms. Senecal's Security Interest Perfected on March 8, 1991?

Compliance with Tennessee's motor vehicle title and registration statutes is the exclusive means for perfecting a security interest in automobiles that are not part of a dealer's inventory. Perfecting a security interest under these statutes requires both the filing of an application and the notation of the lien on the certificate of title. *Bank of Commerce v. Waddell*, 731 S.W.2d at 62; *Star Chrysler–Plymouth, Inc. v. Phillips*, slip op. at 11–12; *Gourley v. Chrysler Credit Corp.*, Davidson Equity, slip op. at 6–7, 3 T.A.M. 37–5, [1973–1980 Transfer Binder] Secured Transactions Guide (CCH) ¶ 53,135 (Tenn.Ct. App. July 28, 1978); *Pearson Bros. v. Moody*, Shelby Cir., slip op. at 16–17, 4 Secured Transactions Guide (CCH) ¶ 580, at 49,071 (Tenn.Ct.App. Dec. 11, 1957). Merely submitting an application for a certificate of title or to note a lien on a certificate of title does not result in perfection of a security interest if the filing does not lead to a recordation of the lien on the title. *Walker v. Ford Motor Credit Co. (In re Clark)*, 112 B.R. 226, 230 (Bankr.E.D.Tenn.1990); *Weill v. United Bank of Chattanooga (In re Poteet)*, 5 B.R. 631, 636 (Bankr.E.D.Tenn.1980).

Ms. Senecal's security interest in Ms. Reguli's automobile was unperfected on May 8, 1991. Her lien did not appear on the automobile's certificate of title issued on July 20, 1990, and the Motor Vehicle Division had disapproved her January 29, 1991 application to note her lien on the title. In accordance with Tenn.Code Ann. § 47–9–301(1)(b), Ms. Senecal's lien was, therefore, subordinate to Keep Fresh Filters' execution lien.

### The Relation Back of Ms. Senecal's Security Interest

Once a lien is noted on an automobile's certificate of title, it relates back to the date of the filing of the application requesting the notation of the lien. *General Motors Acceptance Corp. v. Third Nat'l Bank*, 812 S.W.2d 593, 597 (Tenn.Ct.App.1991); *In re Ridley*, 50 B.R. 51, 54 (Bankr.M.D.Tenn. 1985). The application must, however, be complete in order to trigger the relation-back rule. *Personal Loan & Fin. Corp. v. Guardian Discount Co.*, 206 Tenn. at 226, 332 S.W.2d at 506; *Weill v. United Bank (In re Poteet)*, 5 B.R. at 636. The courts have declined to follow the relation-back rule when the application has been lost, *Waldschmidt v. Smith (In re York)*, 43 B.R. 36, 39 (Bankr. M.D.Tenn.1984); when the application has been rejected, *Walker v. Ford Motor Credit Co. (In re Clark)*, 112 B.R. at 231; or when the Motor Vehicle Division has erroneously failed to note the lien. *Gourley v. Chrysler Credit Co.*, slip op. at 9.

Ms. Senecal finally perfected her security interest in Ms. Reguli's automobile on May 28, 1991 when the Motor Vehicle Division issued a new title certificate noting her lien. This security interest did not, however, relate back either to the date of Ms. Reguli's original 1990 application for a certificate of title or to Ms. Senecal's January 1991 application to note her lien on the certificate of title. The 1990 application did not request the notation of Ms. Senecal's lien on the certificate of title, and the January 1991 application was disapproved because of incomplete documentation.

Ms. Senecal did not submit a complete application until May 28, 1991 when she cured the deficiencies in her January 1991 application by providing the additional documentation requested by the Motor Vehicle Division. The perfection of her security interest could only relate back to May 28, 1991 when her application was complete. Accordingly, the relation-back rule is of no assistance to Ms. Senecal because Keep Fresh Filters' execution lien arose almost three weeks earlier on May 8, 1991.

### III.

One final issue remains. Ms. Senecal and Ms. Reguli assert that Keep Fresh

Filters lost its execution lien on Ms. Reguli's automobile when the sheriff's office turned the automobile over to them on May 28, 1991. We disagree.

An execution cannot be suspended once commenced by proper process. *Cook v. Smith,* 9 Tenn. (1 Yer.) 148, 148 (1829); *Overton v. Perkins,* 8 Tenn. (Mart. & Yer.) at 371. The sheriff has only a limited interest in levied goods and holds them for the judgment creditor's benefit. Sam B. Gilreath & Boddy R. Aderholt, *Caruthers' History of a Lawsuit* § 487 (8th ed. 1963). A judgment creditor has a right to have its judgment satisfied by sale of the levied goods unless it abandons its right. *Evans v. Barnes,* 32 Tenn. (2 Swan) 291, 293–94 (1852); *Overton v. Perkins,* 8 Tenn. (Mart. & Yer.) at 371. Persons asserting abandonment by a judgment creditor must prove distinctly and clearly that the creditor abandoned its lien rights. *Evans v. Barnes,* 32 Tenn. (2 Swan) at 294.

Ms. Reguli and Ms. Senecal have not offered distinct and clear proof that Keep Fresh Filters waived its execution lien on Ms. Reguli's automobile. The sheriff's office did not inform Keep Fresh Filters that Ms. Reguli had requested the return of her automobile and did not request Keep Fresh Filters to furnish the indemnity bond authorized by Tenn.Code Ann. § 26–3–104 (1980) when the title to levied property is disputed. The record contains no evidence that Keep Fresh Filters knew about or authorized the return of the automobile. The erroneous conduct of the sheriff's office should not be attributed to Keep Fresh Filters under these circumstances.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal jointly and severally to Connie Reguli and Iona Senecal and to their surety for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.

## *JUDGMENT*

This cause came on to be heard upon the record on appeal from the Davidson County Chancery Court, the briefs of the parties, and the arguments of counsel. Upon consideration of the entire record, this court finds and concludes that the trial court's judgment should be affirmed and remanded.

In accordance with the opinion filed contemporaneously with this judgment, it is, therefore, ordered, adjudged, and decreed that the trial court's judgment be and is hereby affirmed, that the cause be remanded to the trial court for further proceedings consistent with this court's opinion, and that the costs be taxed in the manner provided in this judgment.

It is further ordered that the costs of this appeal be taxed jointly and severally against Connie Reguli and Iona Senecal, principals, and H. Tom Kittrell, surety, for which execution may issue if necessary.

/s/ Henry F. Todd
HENRY F. TODD, PRESIDING JUDGE

/s/ Ben H. Cantrell
BEN H. CANTRELL, JUDGE

/s/ William C. Koch, Jr.
WILLIAM C. KOCH, JR., JUDGE